[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11436
_____

D.C. Docket No. 5:10-cv-01658-AKK


ALEX WAYNE MORTON,
an individual,

Plaintiff - Appellee,

versus

JEREMY KIRKWOOD,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 8, 2013)

Before MARCUS and MARTIN, Circuit Judges, and SCRIVEN,[*] District Judge.

MARCUS, Circuit Judge:

---

[*] Honorable Mary S. Scriven, United States District Judge for the Middle District of Florida, sitting by designation.

In this civil rights case, Officer Jeremy Kirkwood of the City of Guntersville Police Department appeals the district court's denial of his motion for summary judgment on the basis of qualified immunity. Kirkwood shot Alex Wayne Morton late at night on January 7, 2010, while Morton was inside his car. The shots paralyzed Morton. According to Kirkwood, he shot Morton after Morton accelerated his car, threatening the life of a nearby police officer. According to Morton, he never accelerated his car, and Kirkwood nonetheless shot him seven times after he put his car in park. Morton sued Kirkwood for damages under 42 U.S.C. § 1983, alleging that Kirkwood used excessive force in violation of the Fourth Amendment. Morton also sued Kirkwood for assault and battery under Alabama's law.

After thorough review, we conclude that Kirkwood is not entitled to qualified immunity. Viewing the evidence in the light most favorable to Morton, as we must at this stage in the proceedings, we conclude that no reasonable police officer would have used deadly force against Morton. Also, clearly established law gave Kirkwood fair notice that his actions, as alleged by Morton, violated the Fourth Amendment. Similarly, accepting Morton's account of the tragic events that led to his grievous injury, state agent immunity does not apply to the assault and battery claim. We, therefore, affirm the district court's denial of summary judgment.

2

I.

At their depositions, Kirkwood and Morton offered sharply clashing accounts about the shooting. At the summary judgment stage, we must view the evidence in the light most favorable to the non-movant. See Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). We therefore set forth the non-movant's account of the shooting.

Late on January 7, 2010, Morton sat in his car in a park. The night was frigid, so Morton let the car's engine run. He left the car's headlights on too. Morton was speaking to his aunt on his cellphone when he saw a truck enter the park. As the truck neared, Morton recognized it as a police vehicle.[1] He concluded his telephone conversation and drove away, slowly, letting the car coast. The car moved at its coasting speed, which Morton estimated at about one mile per hour.

Morton was continuing on his way out of the park at coasting speed when he noticed a police officer chasing him. At no time did Morton see anyone in front of his car. Nor did he see Nugent anywhere on the scene. He then heard the police officer shout. Morton said that he immediately shifted his car to park and raised his

---

[1] Officer Tim Nugent drove the truck. Beside him sat Kirkwood, his partner. According to Nugent and Kirkwood, Morton stood outside in the park, and he dashed for his car when he saw the police. Even though they lacked probable cause to arrest Morton for any crime, Nugent and Kirkwood parked the police truck and chased Morton on foot when they saw him flee. Kirkwood has conceded, however, that at this stage he cannot contest the testimony that Morton sat inside his car the entire time.

3

hands. Kirkwood nonetheless shot at the car; seven bullets struck Morton.[2] Immediately after the shooting began, Morton scrambled to escape from the car. The car shifted to reverse and traveled in reverse until it bumped into a tree, where it stopped. Morton does not remember how the car got in reverse, but he assumes that he accidently shifted the gear while he tried to escape. It is undisputed, however, that the car shifted to reverse and traveled backward at some point and that it continued backward after the shooting.

The Alabama Bureau of Investigation examined the crime scene and found tire tracks, thirty-four feet in length, visible over fallen leaves, shattered glass thirteen feet from the car's resting place, and cartridge casings spread over a "sixteen foot area parallel to the tracks."

Morton sued Kirkwood in the U.S. District Court for the Northern District of Alabama alleging that Kirkwood violated his Fourth Amendment rights and also committed assault and battery in violation of state law.[3] Kirkwood moved for summary judgment on qualified immunity grounds. The district court denied Kirkwood's motion, and he now appeals.

II.

---

[2] Kirkwood disputes this version of events. He testified that Morton was initially on foot, that Morton got into his car and accelerated, even though Nugent was standing in front of Morton's car, and that he shot Morton only to protect Nugent.

[3] Morton also sued Nugent and the City of Guntersville, but Guntersville and Nugent were dismissed from the lawsuit by stipulation of the parties. The only remaining defendant is Kirkwood.

We review a district court's denial of summary judgment on qualified immunity grounds de novo. Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir. 2011). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review all evidence and factual inferences "in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Skop, 485 F.3d at 1136 (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004)). We review the evidence this way because the "issues appealed here concern 'not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of "clearly established" law.'" Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998) (per curiam) (quoting Johnson v. Jones, 515 U.S. 304, 311 (1995)). We acknowledge that the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009) (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)).

Qualified immunity protects government officials who were sued individually "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what

5

the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability . . . ." McCullough, 559 F.3d at 1205.

In order to obtain qualified immunity, an official must first establish that he acted within his discretionary authority. Skop, 485 F.3d at 1136. Morton does not dispute that Officer Kirkwood acted within his discretionary capacity when he shot Morton. The qualified immunity analysis thus shifts the burden to Morton, who must show that Kirkwood does not merit qualified immunity. See id. at 1136-37. Qualified immunity does not apply where the facts show that the official violated the plaintiff's constitutional rights and where the law clearly established those rights at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Accepting Morton's testimony as true, we conclude that Kirkwood violated a clearly established constitutional right.

## A.

We have little difficulty concluding on this record that, if we accept Morton's account, as we must, Officer Kirkwood violated Morton's Fourth Amendment right to be free from the use of excessive force. "[A]pprehension by the use of deadly force is a seizure . . . ." Tennessee v. Garner, 471 U.S. 1, 7 (1985). "Determining whether the force used to effect a particular seizure is

6

'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). "In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough, 559 F.3d at 1206. In excessive force cases, we are mindful that officers make split-second decisions in tough and tense situations. See Jean-Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010).

In deciding whether a police officer used excessive force, we pay "careful attention to the facts and circumstances" of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Garner, 471 U.S. at 8-9). In the deadly force context, we have observed that a police officer may constitutionally use deadly force when the officer

> (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical

7

harm"; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

McCullough, 559 F.3d at 1206 (quoting Vaughan v. Cox, 343 F.3d 1323, 1329-30 (11th Cir. 2003)). Although these factors are useful, we cannot apply them mechanically, see Penley v. Eslinger, 605 F.3d 843, 849-50 (11th Cir. 2010), and "we must still slosh our way through the factbound morass of 'reasonableness,'" Scott v. Harris, 550 U.S. 372, 383 (2007). Here, we easily conclude that Kirkwood violated Morton's constitutional rights.

To begin with, Kirkwood had no probable cause to believe Morton committed any crime, let alone a serious crime involving the infliction or threatened infliction of serious physical harm. See Garner, 471 U.S. at 11. Nor did he have reason to believe that Morton was a threat to anyone. Next, Morton testified that he shifted his car to park and raised his hands when he heard Officer Kirkwood shout at him, so, if that account is credited, Kirkwood could not have reasonably believed that he had to shoot Morton to prevent his escape. In response, Kirkwood used deadly force, which placed Morton's "fundamental interest in his own life" in jeopardy. Id. at 9.

To be sure, Officer Kirkwood testified that Morton accelerated the car while Officer Nugent was standing in front of the car and that he shot Morton to protect Nugent from being struck by the moving vehicle. But Kirkwood's testimony is

8

flatly contradicted by Morton's. According to Morton, he saw no one in front of his car, he never accelerated his car -- allowing it, instead, to coast at about one mile per hour -- and, notably, he shifted his car to park before Kirkwood shot him. In Morton's version of events, Kirkwood shot an unarmed man in a stationary vehicle while having no reason to believe that the man would place anyone's safety in danger. A reasonable officer would not have shot Morton under these circumstances, and therefore Kirkwood's use of deadly force violated Morton's Fourth Amendment right to be free from excessive force.

## B.

Kirkwood would nonetheless be entitled to qualified immunity unless Morton can show that the law clearly established his rights at the time of the putative misconduct. See Pearson, 555 U.S. at 232. We undertake this analysis "in light of the specific context of the case, not as a broad general proposition." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quoting Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011)). And the right must be clear enough that any reasonable officer "would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

A plaintiff can demonstrate that a right was clearly established in a few ways. He can, for instance, produce a materially similar case decided by the

9

Supreme Court, this Court, or the highest court of the relevant state. Hoyt, 672 F.3d at 977. A right can be clearly established, however, even in the absence of precedent. A plaintiff can point to a "broader, clearly established principle [that] should control the novel facts in [his] situation." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). Finally, a plaintiff may show that an "official's conduct 'was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'" Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000) (alteration in original) (quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam)). "This test entails determining whether 'application of the [excessive force] standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful.'" Id. at 926-27 (alterations in original) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993)).

Morton's Fourth Amendment right to be free from the use of deadly force was clearly established well before January 7, 2010, the night he was shot. In Tennessee v. Garner, a case decided in 1985, a police officer shot a burglar to impede his escape. 471 U.S. at 3-4. The burglar died, and the Supreme Court held that the police officer violated the burglar's right to be free from unreasonable seizures:

10

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

Id. at 11. That being said, the Supreme Court recognized that the use of deadly force is not always unconstitutional. Thus, for example, an officer might reasonably use deadly force to prevent escape where he has probable cause to believe that the suspect might cause serious physical harm to police officers or bystanders. Id.

We have applied Garner to car chases and have "consistently upheld an officer's use of force and granted qualified immunity" where the plaintiff "used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force." McCullough, 559 F.3d at 1207. But where the plaintiff did not use or did not threaten to use his car as a weapon, we have rejected an officer's use of deadly force. Thus, for example, in Vaughan v. Cox, a 2003 case, the police gave chase to a truck they suspected was stolen. 343 F.3d at 1326. The truck sped along the highway at the speed limit. Id. Despite the police presence, the truck driver would not stop. Id. According to the plaintiff -- a passenger in the truck -- the driver did not swerve from lane to lane and did not

11

place anyone's safety at risk. Id. at 1327 & n.2. The truck accelerated to fifteen miles beyond the speed limit. A police officer eventually shot the truck three times. Id. One bullet struck the plaintiff, paralyzing him. Id. at 1327. The plaintiff sued the police officer who shot him. We concluded that "a reasonable jury could find, under [the plaintiff's] version of the facts, that the . . . use of deadly force to apprehend [the plaintiff] was unconstitutional," because "[g]enuine issues of material fact remain[ed] as to whether [the truck's] flight presented an immediate threat of serious harm . . . at the time [the officer] fired the shot." Id. at 1330.

And we held that the plaintiff's constitutional right was clearly established at the time of the incident. "Under Garner, a police officer can use deadly force to prevent the escape of a fleeing non-violent felony suspect only when the suspect poses an immediate threat of serious harm to police officers or others." Id. at 1332. Like Garner, then, Vaughan gave fair warning that the use of deadly force against a non-resisting suspect who posed no danger violates a suspect's Fourth Amendment right to be free from excessive force. While the facts of neither Vaughan nor Garner exactly match the facts here, Morton presented less of a safety and flight risk than the driver in Vaughan or the suspect in Garner. The truck in Vaughan was speeding on a highway; Morton's car was parked. In Vaughan, the driver refused to stop when the police ordered him to do so; Morton immediately raised his hands when he heard Officer Kirkwood shout. In Vaughan, the driver was suspected of

12

car theft; Morton was suspected of no crime. And in Garner a criminal suspect sought to flee, whereas Morton did not flee and was not suspected of a crime. "[I]n the light of pre-existing law," here Garner and Vaughan, "the unlawfulness" of Kirkwood's alleged actions was "apparent," and so qualified immunity does not apply. Terrell v. Smith, 668 F.3d 1244, 1256 (11th Cir. 2012) (quoting Anderson, 483 U.S. at 640).

## III.

In fact, Kirkwood does not contest that, if we accept Morton's version of events, qualified immunity does not apply. Instead, Kirkwood attacks Morton's version of events, arguing that objective evidence renders Morton's testimony utterly incredible because it proves that Morton's car moved. Under Scott v. Harris, Kirkwood argues, we can reject Morton's testimony wholesale, even at the summary judgment stage. 550 U.S. at 380. In so arguing, Kirkwood offers four pieces of forensic evidence that, he contends, utterly discredit Morton's version of events: first, shattered glass lay thirteen feet from the car's resting place; second, cartridge casings were spread over sixteen feet; third, tire tracks showed that the car traveled thirty-four feet; and, finally, one expert testified that Morton did not raise his arms before he got shot. We find Kirkwood's argument unpersuasive.

In Scott, a video recorded a high speed chase between a police officer and a § 1983 plaintiff. Id. at 374-75. The video contradicted the plaintiff's version of

13

events. The Supreme Court wrote that, because the plaintiff's version was "so utterly discredited by the record," it would view the "facts in the light depicted by the videotape." Id. at 380-81. The Court explained that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380. In Scott, the Supreme Court did not tinker with the summary judgment standard, for it merely held "that when documentary evidence 'blatantly contradict[s]' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version on summary judgment." Witt v. W. Va. State Police, 633 F.3d 272, 276-77 (4th Cir. 2011) (alteration in original) (quoting Scott, 550 U.S. at 380). At times, we too have discarded a party's account when the account "is inherently incredible and could not support reasonable inferences sufficient to create an issue of fact." Riley v. City of Montgomery, 104 F.3d 1247, 1251 (11th Cir. 1997). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994). Thus, where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible. Unfortunately for Kirkwood, he does not offer

14

a video recording of the incident. He offers, rather, forensic evidence that does not so utterly discredit Morton's testimony that no reasonable jury could believe it.

Kirkwood's argument falters because Morton's testimony may reasonably be harmonized with the circumstantial evidence that the car was moving. After all, Morton testified that he moved his car forward when he saw a truck enter the park, and no one disputes that Morton's car went backwards after the shooting. Morton and Kirkwood are not clashing over whether the car moved, but rather arguing over <u>when</u> and <u>how</u> the car moved. And the evidence to which Kirkwood points is silent on the "when" and "how" questions. Regardless, Morton's experts dispute the relevance of this evidence. One expert opined, for instance, that one cannot draw any inference from the cartridge casings: "[E]ven whatever way that they do eject, once it hits the surface, it may bounce in any direction. So to try to reconstruct where a person was standing by the location of the hulls is just once again speculation." Another expert opined that the shattered glass undermined <u>Kirkwood's</u>, not Morton's, version of events. We are, therefore, obliged to accept Morton's account at this stage of the proceeding. The record plainly yields sharply dueling accounts of what happened and why the critical shots were fired. It does not utterly discredit Morton's account.

IV.

15

Finally, as for the state law claims, Morton alleged that Kirkwood committed assault and battery when he fired upon the car. In Alabama, a state agent is immune from civil liability for acts "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a). This includes acts arising from the "enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000). Nonetheless, a police officer loses this immunity when he "acts willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law." Id.

The parties agree that Morton's claim "arise[s] from a function that would entitle" Kirkwood "to immunity." Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006). As a result, to survive summary judgment, Morton had to show that Kirkwood "acted willfully, maliciously, fraudulently, in bad faith, or beyond his . . . authority." Id. "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (alteration in original) (quoting Butts, 775 So. 2d at 178); see also Ex parte City of Tuskegee, 932 So. 2d 895, 906 n.6 (Ala. 2005) ("[I]f an officer is engaged in an arrest but he or she fails to discharge the arrest

pursuant to detailed rules or regulations, such as those stated on a checklist, then the officer is not entitled to immunity." (alteration and internal quotation marks omitted)).

Morton asserts that Kirkwood violated the Guntersville Police Department Policy Manual ("Policy Manual"), which all parties agree applied to Kirkwood. Sections of the Policy Manual bar officers from shooting at suspects, even if they are escaping. For instance, the Policy Manual bars officers from shooting their guns "in an attempt to disable moving vehicles, unless subjects from the vehicle are firing at the officer." Citing to another section of the Policy Manual, which allows police officers to shoot at suspects if the suspects are "about to kill or seriously injure the officer [or] about to kill or seriously injure another person," Kirkwood contends that he deserves state agent immunity. But, just as with his qualified immunity argument, Kirkwood asks us to wholly disregard Morton's testimony in favor of his own. As we have already explained, we cannot disregard that testimony at the summary judgment stage. Whether Kirkwood violated the Policy Manual depends on whether one believes Kirkwood or Morton. Plainly, this too is an issue for a jury to decide.

In short, if Morton's version of events is accurate, a reasonable officer on the scene with knowledge of the attendant facts would not have shot Morton, hitting him with seven bullets, while he sat stationary in his car with his hands up. This

17

alleged conduct violated Morton's Fourth Amendment rights. And clearly established law gave Kirkwood fair warning that the use of deadly force under these circumstances would be unconstitutional. Likewise, under Morton's account, Kirkwood violated the Policy Manual, which would strip Kirkwood of state agent immunity. We, therefore, affirm the district court's denial of Kirkwood's motion for summary judgment.

AFFIRMED.