DO NOT PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14932
Non-Argument Calendar

_____

D. C. Docket No. 2:11-cv-00254-WC

S.S.,
by and through his mother and
next of kin, Tammy Montgomery,

Plaintiff-Appellee,

versus

JEREMY B. BOLTON,
Officer, individually and in his official capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 11, 2013)

Before HULL, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

S.S. filed a complaint in the Circuit Court of Montgomery County, Alabama, alleging several civil rights violations and state tort claims arising out of events occurring on the night of October 7, 2010.  S.S. named the City of Montgomery, Acting Chief of Police Kevin Murphy, Officer Joshua Johnston, and Officer Jeremy Bolton as Defendants.  S.S. brought ten counts against Defendants, including:  (1) excessive force; (2) assault and battery; (3) failure to intervene; (4) negligent supervision; (5) inadequate training; (6) unlawful search and seizure; (7) denial of due process; (8) civil conspiracy; (9) deliberate indifference; and (10) outrage.  After removal to federal court,[1] all Defendants filed for summary judgment.  The district court granted summary judgment on all Counts as to the City of Montgomery, Murphy, and Johnston, and, in part, to Bolton.  However, the district court denied qualified immunity to Bolton as to Counts 1, 2, 6, and 10.  Bolton appeals the district court's denial of qualified immunity.[2]

---

[1]  Counts 1, 6, and 7 alleged violations of the Fourth and Fourteenth Amendment.

[2]  We have jurisdiction to review the district court's denial of qualified immunity in an interlocutory appeal.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1250 n.3 (11th Cir. 2013).

*Background*[3]

On the night of October 7, 2010, S.S. was driving a pickup truck when he pulled into a driveway, exited the truck, and walked to the end of the driveway. By that time, two unmarked Crown Victoria automobiles containing Bolton and Johnston pulled up along the sidewalk. Bolton and Johnston believed S.S. to be a potential suspect to a gas station robbery, based on his physical description and the location of a tracking device contained with the money stolen from the gas station.

Bolton and Johnston, both wearing plain clothes black shirts and khaki pants, with their guns drawn, ordered S.S. to the ground. While complying with their command, S.S. stated that he had not done anything wrong. As S.S. was in the process of kneeling to the ground, he dropped his keys while his hands were in the air. Bolton then hit S.S. on the head with his pistol, and S.S. fell to the ground. When S.S. "came to his senses" he was lying face down with his hands cuffed behind his back, and Bolton's knee in his back. Bolton then stated, "you're lucky we didn't kill your ass." Johnston stood back in the street during these events, "watch[ing] out for his partner." S.S. began to feel warm, noticed his shirt was full of blood, and said to Bolton that he had "busted his head." Bolton then removed S.S.'s skullcap and noticed that S.S.'s head was injured and bleeding.

---

[3] In reviewing the district court's denial of qualified immunity to Bolton, we must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences from the evidence in that party's favor. *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Thus, for the purposes of this opinion we accept S.S.'s view of the facts, although the facts of what happened during the encounter are in dispute.

Although Bolton contended that he could not see S.S. clearly, S.S. asserted the cargo light of his truck was behind him, so Bolton's view was not obstructed. S.S. maintained that he was not involved in a robbery or speeding, did not resist arrest, and did not verbally or physically threaten Bolton or Johnston. He further claimed that he was not offered medical assistance by either Bolton or Johnston for his open head injury which required seven staples. S.S. denied carrying a pistol or tossing any sort of weapon on the ground, and Bolton and Johnston testified that no weapon was recovered at the scene. S.S. also denied making any overt movement toward the keys that fell on the ground as he was kneeling. S.S. further claimed that after the incident, he heard radio dispatch advise Bolton and Johnston that they were at the wrong place and had the wrong person. Bolton then left the scene while S.S. was still handcuffed on the ground. Johnston pulled S.S. upright, took the handcuffs off and told him he was not the one who hit him on the head, and told him to go in the house and have a nice day.

*Standard of Review*

A district court's denial of summary judgment on qualified immunity grounds is reviewed de novo. *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). We view the evidence and draw all factual inferences in favor of the non-moving party. *Id.* "We review the evidence this way because the issues appealed here concern not which facts the parties might be able to prove, but, rather,

4

whether or not certain given facts showed a violation of clearly established law."
*Id.* (quotations omitted).  Consequently, the fact as accepted for summary
judgment purposes "may not be the actual facts of the case." *Id.*

*Discussion*

"Qualified immunity is applicable unless the official's conduct violated a
clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232
(2009).  We look to two factors in resolving whether a government official is
entitled to qualified immunity.  A court must decide (1) whether the facts that a
plaintiff alleged make out a violation of a constitutional right, and (2) whether the
right was clearly established at the time of the defendant's alleged misconduct.  *Id.*
It is not mandatory to consider the two factors in a particular order, and courts may
"exercise their sound discretion in deciding which of the two prongs of the
qualified immunity analysis should be addressed first in light of the circumstances
in the particular case at hand." *Id.* at 236.

*Excessive Force*

"Our cases hold that gratuitous use of force when a criminal suspect is not
resisting arrest constitutes excessive force." *Brown v. City of Hunstville*, 608 F.3d
724, 738 (11th Cir. 2010) (quotation omitted).  Viewing the facts in the light most
favorable to the non-moving party, S.S. dropped his keys, with his hands in the air,
while kneeling to the ground, in full compliance with Bolton's and Johnston's

orders.  Bolton then approached S.S. and hit him in the head with a gun, causing an injury that required seven staples.  According to S.S., the area was lit by the truck's cargo light, and S.S. made no movement toward the dropped keys.  S.S.'s version of the facts alleged that Bolton used gratuitous force while S.S. was not resisting and was fully complying with the officers' commands, which is a violation of a constitutional right that was clearly established at the time of the conduct.  Thus, the district court did not err in denying qualified immunity to Bolton as to S.S.'s excessive force claim.

*Assault and Battery*

Regarding S.S.'s assault and battery claim, Bolton contends he is entitled to state agent immunity under Alabama Code § 6-5-338 (1975).  A state agent is not immune from civil liability, "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."  *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  S.S.'s version of the facts supports that Bolton acted willfully in hitting him in the head with a gun, while he was not resisting arrest.  Bolton merely quibbles with S.S.'s view of the facts, rather than showing that state agent immunity would apply even if we view S.S.'s facts as true.  Therefore, the district court did not err in denying state agent immunity to Bolton on S.S.'s assault and battery claim.

*Search and Seizure*

"A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quotations and emphasis omitted).  Under the Supreme Court's seminal decision in *Terry v. Ohio*, "law enforcement officers may seize a suspect for a brief, investigatory . . . stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).  Qualified immunity is still available to an officer who mistakenly concludes reasonable suspicion is present, so long as the officer had "arguable" reasonable suspicion for the investigatory stop.  *Jackson v. Sauls*, 206 F.3d 1156, 1165-66 (11th Cir. 2000).  Although an individual may be engaged in activity that is lawful, "officers may detain the individual to resolve the ambiguity."  *Lewis*, 674 F.3d at 1304 (quotations and brackets omitted).  *Terry* requires that, under the totality of the circumstances, detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.  *Id.* at 1305.

7

Based on the totality of the circumstances at the time of the investigatory stop, Bolton had reasonable suspicion to believe that S.S. was involved in criminal activity. S.S.'s physical description generally matched that of the robbery suspect and the tracking device contained with the money stolen from the gas station indicated that the money was nearby. As the reasonable suspicion inquiry is based on information available to the officer at the time of the stop, not information that the officer might later discover, *see id.*, the seizure of S.S. did not violate the Fourth Amendment. The district court erred in denying qualified immunity to Bolton on this claim because even under S.S.'s version of the facts, reasonable suspicion existed for the seizure.[4]

*Outrage*

For the tort of outrage under Alabama law, a plaintiff must establish the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003). From our review of the record, S.S. failed to provide evidence through testimony or medical records of "emotional distress so severe that no reasonable person could be expected to endure it." Thus, there is no genuine issue of material

---

[4] While the seizure itself did not violate the Fourth Amendment, S.S.'s version of the facts supports an excessive force claim under the Fourth Amendment. The search and seizure and excessive force claims are separate, and Bolton in entitled to qualified immunity on the search and seizure claim exclusive of the excessive force claim.

fact, and the district court erred in failing to grant Bolton summary judgment on this claim.

*Conclusion*

Accordingly, we affirm the district court's denial of qualified immunity to Bolton on the excessive force and assault and battery claims, and reverse the district court's denial of summary judgment as to the search and seizure and outrage claims.

**AFFIRMED IN PART, REVERSED IN PART.**