[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13982
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cv-01240-CLM

NOAH SKELTON,

Plaintiff-Appellant,

versus

BIRMINGHAM AIRPORT AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 30, 2021)

Before WILSON, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Noah Skelton appeals the district court's order granting summary judgment to the Birmingham Airport Authority (BAA) on his claims of race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a).  Upon review of the district court's order, we find that the district court did not err in granting summary judgment on either claim.  Accordingly, we affirm.

## I.

We review an entry of summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of the nonmoving party.  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is not genuine unless a reasonable jury could return a verdict in favor of the non-moving party.  *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013).  We will give credence to evidence favoring the non-movant as well as uncontradicted and unimpeached evidence from disinterested witnesses that supports the moving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

2

II.

Skelton, a Caucasian male, began working at BAA as an Operations Specialist I (Ops I) in April 2014.  BAA operates the Birmingham-Shuttlesworth International Airport (the Airport) in Birmingham, Alabama.  The racial makeup of the BAA is predominantly African American.  As an Ops I, Skelton maintains the security of the Airport's landside areas in accordance with BAA policies and federal safety regulations.

By June 2016, Skelton's employee record contained eleven disciplinary incidents from the time he was hired by BAA.  Then, in June 2016, Andy Cuesta, another Ops I, reported to human resources that Skelton had been bothering him at work by repeatedly complaining about their shared supervisors despite Cuesta's requests to stop.  Skelton's complaints to Cuesta included concerns that supervisors treated women better than men and "favor[] only a certain class of people and not others."  Eight days after Cuesta's reporting, BAA's Director of Operations issued Skelton a written reprimand for "attempting to create an environment of discontent…amongst [his] coworkers" and for showing "a continued pattern of failing to follow standard operating procedures."  Skelton signed the written reprimand and continued his employment.

In February 2017, the BAA suspended Skelton for three days without pay, allegedly for his continued failure to adhere to the BAA's policies and procedures.

Skelton's suspension document stated that he had been disciplined by supervisors an additional nine times since the June 2016 written reprimand.  During the suspension meeting, Skelton complained that the BAA was unfairly singling him out.  Two days later, Skelton filed a charge of discrimination with the EEOC, alleging that his suspension violated Title VII.

Skelton received his 2017 performance evaluation just over a month after he filed the EEOC complaint.  Although the evaluation rated Skelton as "Meets Expectations," it cited his June 2016 written reprimand and February 2017 suspension as evidence that he needed further improvement.  Skelton wrote in the employee comments section of his evaluation his belief that the critical feedback was in response to his EEOC filing.  In September 2018, David Thompson, a supervisor, allegedly yelled at Skelton in front of a non-supervisory co-worker for not answering the phone while on break.  Skelton reported the incident to a human resources manager and stated that the interaction made him uncomfortable.  Thompson was allegedly never disciplined for this behavior.

In his civil suit in district court, Skelton alleged that the BAA treated him unfavorably as compared to his African American and female coworkers in violation of Title VII.  In so arguing, Skelton alleged that BAA had a habit and/or practice of discriminating against Caucasians and males.  To support this, Skelton claimed that he was falsely accused of a multitude of infractions and disciplined,

while his African American and female co-workers were punished less harshly for their violations, if at all. He further alleged that he was denied pay, denied time off, and subjected to a hostile work environment because of his gender and his race. Skelton also asserted that the BAA retaliated against him for engaging in a protected activity.

In response, BAA argued that, applying the *McDonnell Douglas*[1] framework, Skelton could not make a prima facie showing of race or gender discrimination because he could not identify a similarly situated coworker who was treated more favorably. As to the retaliation claim, BAA argued that Skelton could not establish a prima facie case of retaliation because he failed to establish a causal link between any alleged protected activity and an adverse employment action. BAA noted that at the time of Skelton's alleged complaint in February 2017, it had already made the decision to suspend Skelton for three days and had informed him of that decision. BAA argued that Skelton had suffered no adverse employment action since the filing of his EEOC charge, was still employed by BAA, and testified that he liked his job. BAA further argued that Skelton could not show that BAA's legitimate, nondiscriminatory, nonretaliatory justifications for its suspension of Skelton were pretext for any discriminatory or retaliatory animus. BAA also argued that Skelton's complaint did not include a separate count alleging

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

a hostile work environment and made vague and conclusory allegations that he was harassed.

Following discovery, BAA filed a motion for summary judgment, which was granted. After careful review, we conclude that the district court did not err in concluding that Skelton failed to establish a prima facie case of race and gender discrimination through circumstantial evidence because he did not identify any similarly situated comparators. The district court also did not err in determining that Skelton failed to show that his coworkers who engaged in misconduct were treated better than he was. Further, the district court did not err in finding that Skelton failed to establish that any protected activity was causally connected to his materially adverse employment action, where he did not engage in protected activity before his suspension, and the discipline he received a year and a half after his protected activity was too far removed to establish a causal connection. Therefore, we affirm.

### III.

Title VII forbids employment discrimination against any person on the basis of race or sex. 42 U.S.C. § 2000e-2(a). Discrimination can be proven through direct or circumstantial evidence. *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).

In evaluating claims of discrimination based on circumstantial evidence, courts may use the *McDonnell Douglas* burden-shifting framework. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). To establish a prima facie claim of discrimination based on circumstantial evidence under *McDonnell Douglas*, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) the employer treated similarly situated employees who were not members of the plaintiff's class more favorably; and (4) the plaintiff was qualified for the job or benefit at issue. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000).

Skelton's claim fails under the *McDonnell Douglas* framework because Skelton failed to identify any comparators under the third prong. As such, we need not analyze the other prongs. To satisfy the third prong a comparator must be "similarly situated in all material respects," meaning that the plaintiff and comparators are "sufficiently similar, in an objective sense, [such] that they cannot reasonably be distinguished." *Lewis v. City of Union City,* 918 F.3d 1213, 1218, 1228 (11th Cir. 2019) (en banc) (internal quotation marks omitted). Although this standard requires a case-by-case analysis, a similarly situated comparator will ordinarily have engaged in the same basic misconduct as the plaintiff, been subject to the same employment policy, guideline, or rule, shared the same supervisor, and shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

7

Skelton failed to identify any similarly situated comparators who were treated better than he was. Three of the identified comparators were supervisors, not Ops Is; they are thus not similarly situated. And none of the five total identified comparators were alleged to have committed the same or substantially the same misconduct as Skelton. Moreover, each of the comparators was disciplined for the misconduct he or she engaged in. *See id.* at 1227–28. Thus, Skelton did not present a valid comparator. As such, the district court correctly found that he did not establish a prima facie case of race or gender discrimination.

When a plaintiff is unable to produce a comparator, he can still present a triable issue of fact through direct evidence of discriminatory intent or through a "convincing mosaic" of circumstantial evidence that would allow an inference of discriminatory intent. *Id.* at 1220 n.6. Skelton asserts a "convincing mosaic" theory for the first time on appeal. We generally refuse to consider arguments raised for the first time on appeal. *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249–50 (11th Cir. 2012). And specifically, we have held recently that a party forfeits a "convincing mosaic" argument by failing to adequately brief the issue below. *See Bailey v. Metro Ambulance Servs.,* 992 F.3d 1265, 1273–74 (11th Cir. 2021) (per curiam). Accordingly, Skelton waived the "convincing mosaic" argument by failing to raise it below.

Skelton has not provided direct or circumstantial evidence to support a showing of discriminatory intent. To the contrary, the record demonstrates that Skelton received a written reprimand for creating an atmosphere of discontent among his coworkers and was suspended for repeated violations of the employee code of conduct. Thus, the record evidence did not show a genuine dispute as to any material fact, and the district court correctly granted summary judgment to BAA as to Skelton's race and gender discrimination claims. *See Morton*, 707 F.3d at 1284. The district court thus properly granted BAA's summary judgment motion on Skelton's disparate treatment Title VII claim.

IV.

Title VII also prohibits employers from retaliating against an employee because he has opposed any employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Absent direct evidence of retaliation, we employ the *McDonnell Douglas* burden-shifting framework when analyzing claims for retaliation that rely on circumstantial evidence. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

A prima facie claim of retaliation under Title VII requires the plaintiff to show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal connection between his protected activity and the adverse action. *Chapter 7 Tr. v. Gate*

9

*Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).  Title VII's statutory protections are not limited to those who file formal complaints; they also extend to those who voice informal complaints to their superiors or who use their employers' internal grievance procedures.  *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam).  Even if a disputed employment practice is lawful, a plaintiff can show that he engaged in a protected activity if he proves that he had a good faith, objectively reasonable belief that the practice was unlawful. *See Dixon v. Hallmark Cos.*, 627 F.3d 849, 857 (11th Cir. 2010).

A materially adverse employment action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  The plaintiff must generally establish that the employer was aware of the protected expression when it took the adverse employment action.  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).  Close temporal proximity between the protected activity and the adverse action is sufficient circumstantial evidence of a causal connection.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  Nevertheless, causation must be established according to traditional principles of but-for causation, which require proof that the desire to retaliate was the but-for cause of the challenged action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013).

Only three of Skelton's complaints made during the relevant time are protected activity: (1) his February 2017 EEOC complaint; (2) his February 2017 complaint during his suspension meeting; and (3) his written comments on his March 2017 performance evaluation.  Skelton does not argue that he was subjected to any specific materially adverse employment action after March 2017.  Instead, he argues generally that he experienced material adverse actions that, in the aggregate, would discourage someone from complaining about discrimination.

Skelton argues that three disciplinary counseling sessions related to Skelton's alleged workplace misconduct occurring in September 2018, October 2019, and December 2019 were materially adverse actions for engaging in protected activity.  Even so, Skelton cannot show a causal relationship between his protected activities in February and March of 2017 and the alleged adverse employment actions, the first of which occurred a year and a half later in September 2018.  *See Higdon*, 393 F.3d at 1220.  The substantial delay between these events precludes finding a causal relationship.  *Id*.

Here, because Skelton failed to show that any protected activity was causally connected to his adverse employment action, the district court properly granted BAA's summary judgment motion regarding Skelton's Title VII retaliation claims.

**AFFIRMED.**

11