**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-12788
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM COLEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cr-00157-JB-MU-1

_____

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

William Coleman appeals his sentence of 24 months' imprisonment imposed upon revocation of his supervised release. He ar-

gues that his sentence is procedurally unreasonable because the district court clearly erred when it found that he had possessed and displayed a firearm during a shoplifting offense. So he asks that we vacate the district court's sentence and remand for resentencing. After careful review, we affirm the court's decision because its factual findings were reasonable and supported by the record.

## I.

In 2020, an indictment charged Coleman with theft of United States property in violation of 18 U.S.C. § 641. The district court imposed a time-served sentence with a three-year supervised-release term. Then, in October 2022, the district court revoked Coleman's supervised release for failing to abide by various conditions of the supervised release. Based on those violations, the district court sentenced Coleman to 8 months of imprisonment followed by 24 months of supervised release. The court re-imposed all the conditions of the supervised release, including, among other things, that Coleman could not commit new crimes or possess a firearm.

In October 2023, the district court revoked Coleman's supervised release a second time for attempting to elude the police. The court sentenced him to 14 months of imprisonment followed by 12 months of supervised release.

In September 2024, a probation officer submitted a petition to revoke Coleman's supervised release for a third time, alleging that he had possessed a firearm while shoplifting, among other

things. At the revocation hearing, Coleman conceded that he shop-lifted, failed to report to his probation officer, and did not pay res-titution. So Coleman admitted all the allegations except for pos-sessing a firearm. The allegations admitted were Grade C viola-tions, while the firearm possession was a Grade B violation.

At the revocation hearing, a Walmart asset-protection man-ager with 25 years' experience in law enforcement testified about an encounter with Coleman. During the night of the incident, the employee saw Coleman leave the store with merchandise without paying. When the employee confronted Coleman outside the store about the unpaid items, Coleman took some of the items out of his clothes and dropped them on the ground. Then, the em-ployee testified, Coleman reached behind his back and pulled out a firearm, pointing the weapon at him. As a result, the employee took cover behind a pillar in front of the store. The next day, the employee reported the incident, and a police report was made four days later.

The district court also heard testimony from an investigator for the defense. The defense investigator opined that Coleman was not holding a gun, based on surveillance footage that was played at the hearing. Coleman also testified, and he admitted shoplifting but denied possessing a firearm since his release from prison.

Ultimately, after hearing the conflicting accounts, the dis-trict court credited the store employee. The court reasoned that the employee, after 25 years in law enforcement, was capable of identifying a firearm and that, after he saw the gun pointed at him,

he moved behind a column.  Although video footage from the store captured the incident, the court found that the quality of the video made it difficult to determine what Coleman was holding. Still, the court found, the video could be reconciled with the store employee's testimony.

As a result, the district court found that the government had sustained a Grade B violation, with a corresponding guideline range of 21 to 24 months' imprisonment, due to the statutory maximum.  The court entered judgment and imposed a prison term of 24 months with no supervised release to follow.  Coleman's timely appeal follows.

On appeal, Coleman contends the district court erred in determining his sentence because, he says, the court's factual determination that he possessed a firearm is clearly erroneous.

## II.

We review factual findings for clear error.  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).  Factual findings are clearly erroneous, in turn, when, although evidence may support them, we, based on the record as a whole, are left a "with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation and quotation marks omitted).  A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

Credibility determinations are "the province of the fact finder," and we defer to those determinations unless they appear to be unbelievable. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). If the district court's account of the evidence is plausible considering the entire record, we may not substitute our own interpretation of the evidence even if we would have weighed the evidence differently. *Anderson*, 470 U.S. at 573–74.

A sentence is procedurally unreasonable when a district court bases its sentence on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### III.

The government must prove a violation of supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3). Likewise, when a defendant challenges one of the factual bases of his sentence, the government bears the burden of proving that fact by a preponderance of the evidence. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014). This standard requires proof that the existence of a fact is more probable than its nonexistence. *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004). The government must carry its burden with reliable and specific evidence. *United States v. Almedina*, 686 U.S. 1312, 1315 (11th Cir. 2012).

Here, the district court did not clearly err when it found that Coleman possessed a firearm during the shoplifting offense. This finding was supported by the testimony of the Walmart employee who was present during the incident. The employee testified that,

after he confronted Coleman when he was exiting the store with stolen merchandise, Coleman threw the merchandise on the ground, and then he "reached behind his back and pulled out [a] gun and pointed it in my direction."  After that, the employee recounted, Coleman turned the firearm sideways, moved backwards, and turned around and ran through the parking lot.  The district court also heard from the defense's investigator who suggested the supposed firearm was likely an article of clothing instead.  All parties, including the district court, agreed the captured video coverage from the store was not the best quality.

The district court also considered the facts that law enforcement recovered no weapon from the scene, the employee delayed in reporting the incident, and the video evidence was of low quality.  Although it recognized that "experienced people might disagree," the court credited the employee's account, citing his 25 years of law-enforcement experience and his ability to identify a firearm, as well as the immediate action he took in hiding behind a pillar after Coleman pointed a firearm at him.

We cannot say that the district court's choice based on this record was unreasonable.  Indeed, the district court reasonably weighed the witnesses' credibility and chose one permissible view of the evidence over another.  *See Saingerard*, 621 F.3d at 1343.

In cases where testimonies are in direct conflict, the district court's "choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." *Ramirez-Chilel*, 289 F.3d at 749 (quotation marks omitted).  Nothing

in the record shows that the district court credited evidence that was so inconsistent or improbable on its facts that no reasonable factfinder could accept it. *See id.*   And given the undisputed low-quality footage, nothing "completely" or "clearly" contradicts the employee's testimony. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible.").

Because the district court's view of the evidence was plausible in light of the record as a whole, Coleman has not shown that the court clearly erred in finding that he possessed a firearm while shoplifting. As a result, the government met its burden in proving a Grade B violation of supervised release.

For the reasons we have explained, Coleman's sentence is not procedurally unreasonable. *See Saingerard*, 621 F.3d at 1343. Accordingly, we affirm Coleman's sentence of 24 months' imprisonment.

**AFFIRMED.**