[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10251
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22993-JEM

LEON F. HARRIGAN,

Plaintiff–Appellee,

versus

METRO DADE POLICE DEPARTMENT STATION #4, et al.,

Defendants,

ERNESTO RODRIGUEZ,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 23, 2015)

Before MARCUS, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Ernesto Rodriguez, an officer with the Miami-Dade Police Department, shot Plaintiff in the leg while apprehending him for driving a stolen vehicle. Plaintiff sued Defendant in his individual capacity, asserting an excessive force claim under § 1983. Defendant moved to dismiss the claim, arguing that it was barred by qualified immunity and by the *Heck* doctrine. We agree with the district court that Plaintiff has alleged a basis for overcoming qualified immunity and imposing individual liability on Defendant under § 1983, and we therefore affirm the district court's denial of the motion to dismiss on that ground. As we lack jurisdiction to review the district court's interlocutory *Heck* ruling, we dismiss Defendant's appeal as to that issue.

## BACKGROUND

### I.    Factual Background

On July 13, 2012, Defendant Ernesto Rodriguez, a Miami-Dade police officer, was working the midnight patrol shift.[1] Around 12:30 a.m., Defendant allegedly saw a black Ford F-250 truck run a stop sign. Defendant was not aware

---

[1] The operative complaint does not contain a complete description of the facts underlying this case. The Court thus derives those facts both from the complaint and from the attached exhibits. As the parties rely upon and cite the exhibits extensively, the Court treats them as part of the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("Under the Federal Rules of Civil Procedure, these exhibits are part of the pleading 'for all purposes.'") (quoting Fed. R. Civ. P. 10(c)).

of it at the time, but Plaintiff was driving the truck. Defendant ran the tag on the truck, and was advised that it was stolen. He subsequently lost visual contact with the truck, and radioed in an alert to be on the lookout for it ("BOLO").

Around 2 or 3 a.m., another Miami-Dade officer responded to the BOLO, reporting that the truck was parked and unoccupied outside a local residence. Defendant, along with Miami-Dade officers Brad Carter and Clifton Baldwin, set up surveillance on the truck and intermittently monitored it for several hours, hoping to apprehend the driver. However, at some point the truck left its parking spot, unnoticed by the officers.

Several hours later, Officer Carter spotted the truck as he was driving down the road, answering another call. Carter got behind the truck and radioed for assistance. Defendant and Officer Baldwin responded to Carter's call, and the three officers converged on the truck as it was stopped at a red light, in the middle lane of a three-lane road. Carter stayed directly behind the truck. He maintained his position and put his patrol car in park. Defendant pulled up on the driver's side of the truck and stopped his patrol car. Baldwin passed the truck on the passenger side, pulling into the intersection and stopping his patrol car to the right side and out in front of the truck.

Carter remained in his patrol car, but Defendant and Baldwin both got out to investigate. It is undisputed that within a few seconds of exiting his patrol car,

3

Defendant fired shots at the truck, one of which entered the driver's side door and hit Plaintiff in the leg. But the exhibits to the complaint contain conflicting versions of the events immediately preceding the shooting. Baldwin's deposition transcript suggests that Defendant fired the shots as the truck was accelerating towards Baldwin. Baldwin testified that as soon as he got out of his patrol car, he heard the truck's engine rev and saw the truck accelerate directly towards him. According to Baldwin, Defendant fired at the truck as it was accelerating. Defendant likewise said in a sworn statement that he fired at the truck after he heard its engine rev and saw it accelerate towards Baldwin.

Carter's deposition transcript tells a different story. Carter testified that he did not hear the truck's engine rev, or see it move, until after the shots were fired. According to Carter, the truck revved its engine and fled the scene after Defendant fired the shots, not before. Also, and contrary to Baldwin's deposition testimony and Defendant's statement, Carter testified that the truck swerved as it accelerated, so as not to hit Baldwin or his car.

The officers all agree that Plaintiff subsequently led them on a high speed chase that lasted several minutes. Eventually, the truck veered off the road and crashed into a fence. Plaintiff got out and ran into a yard, where he hid. Defendant, Carter, and Baldwin set up a perimeter, while other officers who had

4

joined the pursuit apprehended Plaintiff.  Plaintiff was arrested and transported to the hospital for treatment of a gunshot wound to his leg.

Plaintiff was convicted of four crimes related to the above incident:  (1) third degree theft of a motor vehicle, (2) resisting arrest without violence, (3) aggravated assault on Baldwin with a motor vehicle, and (4) fleeing and eluding officers at a high rate of speed or in a reckless manner.  He was, and remains, incarcerated at the Metro West Detention Center.

## II.    Procedural History

Plaintiff filed this *pro se* § 1983 action in August 2012.  In his initial complaint, Plaintiff stated briefly that he had been the victim of an "illegal assault and battery" when he was shot in the leg by an unknown Miami-Dade police officer during the course of an arrest on July 13, 2012.  Plaintiff attached a copy of an arrest affidavit to the complaint, indicating that he had "eluded police after a police involved shooting" and that he had been transported to the hospital for treatment of a gunshot wound.

Plaintiff was allowed to proceed *in forma pauperis*, and the case was referred to a magistrate judge for frivolity screening pursuant to 28 U.S.C. § 1915. The magistrate judge concluded that additional facts were required to determine whether Plaintiff could state a viable excessive force claim, and gave Plaintiff an opportunity to amend his complaint.  Plaintiff responded with an amendment in

5

which he alleged that Defendant "accidentally shot [Plaintiff] through the driver's side door" while attempting to disable the truck Plaintiff was driving.  In conjunction with his amendment, Plaintiff submitted transcripts of the depositions of Carter and Baldwin, taken in his state criminal trial.

The magistrate judge concluded that the amended complaint still was inadequate, because it included the contradictory statement that the shooting was "accidental."  According to the magistrate judge, an accidental shooting is, by definition, not an excessive use of force.  Thus, the magistrate judge recommended that the amended complaint be dismissed, and that Plaintiff be given one final opportunity to clarify the basis of his excessive force claim.  Plaintiff responded with a second amended complaint, in which he alleged that he was shot and injured as a result of Defendant's "incompetence" and "unlawful use of excessive force."

Based on the supplemental allegations, the magistrate judge entered a revised report and recommendation ("R&R") recommending that Plaintiff's two amendments be considered together as the "operative complaint."  Defendant moved to dismiss the operative complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6), arguing that:  (1) he was entitled to qualified immunity, (2) Plaintiff's claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment

6

in Plaintiff's favor would necessarily imply that his state convictions were invalid, and (3) Plaintiff had failed to state a claim upon which relief could be granted.[2]

The magistrate judge issued an R&R denying Defendant's motion to dismiss. Construing the operative complaint liberally, the magistrate judge found Plaintiff's allegations sufficient to state an excessive force claim. Because the magistrate judge did not think it was apparent from the face of the complaint that Defendant was entitled to qualified immunity, he deferred ruling on that issue pending further development of the record. The magistrate judge did not rule specifically on the *Heck* issue, but he implicitly rejected the *Heck* argument when he denied the motion to dismiss.

The district court adopted the magistrate judge's R&R, and denied Defendant's motion to dismiss. The district court agreed with the magistrate judge's reasoning as to the qualified immunity and failure to state a claim issues, but the court acknowledged that the R&R did not adequately address whether Plaintiff's claim was *Heck*-barred. As to that issue, the district court concluded that it was "possible for Plaintiff to prove the factual allegations in the [operative complaint] without undermining his state court convictions." Consequently, the

---

[2] Defendant had previously moved to dismiss the second amended complaint, but that motion was rendered moot when the district court adopted the magistrate judge's recommendation that the two amendments be considered together as the operative complaint.

court concluded that, based on the materials before it, *Heck* did not bar Plaintiff's excessive force claim.

Defendant appealed the district court's rulings as to qualified immunity and the *Heck* issue.  The case has been stayed pending this Court's resolution of the appeal.

## DISCUSSION

### I. Qualified Immunity

#### A. Jurisdiction and Standard of Review

Our jurisdiction is limited to appeals from "final decisions" of the district court.  28 U.S.C. § 1291.  Ordinarily, a district court's denial of a motion to dismiss does not qualify as a final decision.  *See In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015) ("A final decision is usually a final judgment or similar order by which a district court disassociates itself from a case.") (internal quotation marks and citation omitted).  However, the courts have recognized a "small class of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'"  *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1355 (11th Cir. 2014) (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)).  An order denying a motion to dismiss on the ground of qualified immunity falls into this category, and we therefore have jurisdiction to review it.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)  ("[T]his Court has been careful to say that a

8

district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291.").

We review *de novo* the district court's order denying Defendant's motion to dismiss, applying the same legal standards that governed the district court.  *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015).  To determine whether dismissal is warranted on the ground of qualified immunity, we accept the allegations in the complaint as true and construe the facts favorably to Plaintiff.  *Id.* We then ask whether Plaintiff has alleged (1) the violation of a constitutional right (2) that was clearly established at the time of the incident.[3]  *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### B.     Analysis

####      1.     Plaintiff alleges a Fourth Amendment violation.

Plaintiff's excessive force claim is analyzed under the Fourth Amendment "objective reasonableness" standard.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (citing *Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985)).  Reasonableness in this context depends on all the circumstances relevant to an officer's decision to use force and the amount of force used, as viewed "from the perspective of a reasonable officer on the scene."  *Id.*

---

[3]  It is undisputed that Defendant was engaged in a discretionary duty when he shot at the truck Plaintiff was driving, as required to claim qualified immunity.  *See Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) ("In order to obtain qualified immunity, an official must first establish that he acted within his discretionary authority.").

(internal quotation marks and citation omitted).  We consider several factors to determine whether a particular use of force was reasonable, including the severity of the crime at issue, whether the suspect posed an immediate threat of harm, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  *Penley v. Eslinger*, 605 F.3d 843, 850–51 (11th Cir. 2010) (citing *Graham*, 490 U.S. at 396).  We also consider the "relationship between the need [for force] and [the] amount of force used" and the "extent of the injury inflicted" on Plaintiff. *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (internal quotation marks and citation omitted).

Construing the pleadings liberally[4] and the facts in the light most favorable to Plaintiff, we must assume that Defendant fired at the truck Plaintiff was driving while it was stopped at an intersection, surrounded by three patrol cars, and unprovoked by any action on the part of Plaintiff.  We must further assume that, although Defendant had reason to suspect Plaintiff was driving a stolen vehicle, he had no other indication that Plaintiff was dangerous or posed an imminent threat of harm.  If these assumptions prove to be true, Defendant's conduct was unreasonable, and thus unconstitutional.  *See Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013) (stating that it would violate the Fourth Amendment for an officer to shoot "an unarmed man in a stationary vehicle while having no reason to

---

4  *See Samak v. Warden, FCC Coleman-Medium*, 766 F.3d 1271, 1273 (11th Cir. 2014) ("*Pro se* pleadings are liberally construed.").

believe that the man would place anyone's safety in danger"); *cf. Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (granting qualified immunity where "an objectively reasonable law enforcement officer could well have perceived that [a] moving vehicle was being used as a deadly weapon").

2.      The Fourth Amendment right at issue was clearly established at the time of the incident.

Even assuming a constitutional violation, Defendant is entitled to qualified immunity unless Plaintiff can show that his Fourth Amendment rights were "clearly established" at the time of the shooting.  *Plumhoff*, 134 S. Ct. at 2023.  To be clearly established, the contours of a right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*  "The salient question is whether the state of the law at the time of [the] incident provided fair warning" to Defendant that his "alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (alterations adopted and internal quotation marks and citation omitted).  Fair warning is commonly provided by materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose.  *See Terrell*, 668 F.3d at 1256.  However, a case directly on point is not required as long as "existing precedent . . . placed the statutory or constitutional question beyond debate." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal quotation marks and citation omitted).  *See also Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir.

11

2010) ("judicial precedent with materially identical facts is not essential for the law to be clearly established").

This prong of the qualified immunity analysis is governed by the application of *Morton*, cited above, to the factual assumptions that are required at this juncture in the case. Construing the facts in the light most favorable to Plaintiff, this case is identical to *Morton* in every material respect: Defendant allegedly shot "an unarmed man in a stationary vehicle while having no reason to believe that the man would place anyone's safety in danger." *Morton*, 707 F.3d at 1282.[5] In *Morton*, we denied qualified immunity, holding that it was clearly established by January 2010, the date of the shooting in that case, that Defendant's conduct violated the Fourth Amendment. *Id. Morton* thus controls here, where Plaintiff's shooting under materially indistinguishable circumstances occurred over two years later. *See also Vaughan v. Cox*, 343 F.3d 1323, 1332-33 (11th Cir. 2003) (denying qualified immunity where an officer shot into the cabin of a vehicle he suspected to be stolen as it drove down the highway, refusing to pull over and travelling slightly over the speed limit).

---

[5] Defendant reasonably suspected that Plaintiff was driving a stolen vehicle, but he had no probable cause to believe Plaintiff had committed a "serious crime involving the infliction or threatened infliction of serious physical harm." *Morton*, 707 F.3d at 1281–82 (citing *Garner*, 471 U.S. at 11). "Nor did he have reason to believe that [Plaintiff] was a threat to anyone." *Id.* at 1282.

12

## II.    The *Heck* Doctrine

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that "when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  If so, dismissal of the suit is warranted "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*  Defendant argued below that dismissal was required by *Heck*, because Plaintiff could not prevail on his excessive force claim without invalidating, at the very least, his conviction for aggravated assault on Baldwin with a motor vehicle.  The district court rejected Defendant's *Heck* argument, noting that it was possible for Plaintiff to prove the facts underlying his claim without undermining any of his criminal convictions.

The district court's *Heck* ruling is not a final decision and, unlike its order denying qualified immunity, does not fall within the collateral order doctrine. *See Plaintiff A v. Schair*, 744 F.3d 1247, 1253 (11th Cir. 2014) (noting the "stringent" preconditions necessary to application of the collateral order doctrine); *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) ("A major characteristic of the denial or granting of a claim appealable under *Cohen*'s collateral order doctrine is that unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.") (internal quotation marks and citation omitted).  Neither is the

13

*Heck* ruling "inextricably intertwined" with—or indeed even closely related to—the qualified immunity issue. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995) (suggesting that courts should not extend their *Cohen* jurisdiction to rulings that are not otherwise immediately appealable except where it is "essential to the resolution of [a] properly appealed collateral order[]") (citation omitted). Rather, the *Heck* and qualified immunity issues are governed by entirely separate and unrelated analyses. Accordingly, the Court lacks jurisdiction to review the *Heck* ruling. *Id.*; *see also Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997) (declining interlocutory jurisdiction over issues that were not "sufficiently interwoven with qualified immunity").

## CONCLUSION

For the reasons discussed above, we agree with the district court that Plaintiff has pled a viable basis for overcoming qualified immunity and holding Defendant individually liable under § 1983 for using excessive force during the July 2012 incident. As to the *Heck* issue, we lack jurisdiction to review the district court's ruling. Accordingly, we **AFFIRM** the order of the district court denying Defendant's motion to dismiss on the ground of qualified immunity and **DISMISS** the appeal to the extent Defendant seeks review of the district court's *Heck* ruling.