# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 10, 2021

Lyle W. Cayce
Clerk

No. 21-30015

Janice Irene Creech Poole, *Independent Administrator*, *on behalf of* Brian Steven Poole Estate,

*Plaintiff—Appellee*,

*versus*

City of Shreveport; Jon Briceno,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CV-1125

Before Stewart, Costa, and Willett, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

In this excessive force case, the district court held that a jury could conclude that an officer shot a citizen four times without warning while the citizen was turning away and empty-handed. Because genuine disputes exist on those three material facts—whether the officer warned before shooting, whether the citizen had turned away from the officer, and whether the officer could see that the citizen was unarmed—the court denied a summary judgment motion invoking qualified immunity. The officer now brings this interlocutory appeal. We agree with the district court that there was a

No. 21-30015

violation of clearly established law if the jury resolves the factual disputes in favor of the plaintiff.

I.

In the wee hours of March 31, 2017, 911 operators in Shreveport received a call from a woman who reported that a small silver truck had driven down her street several times. Shreveport City Police dispatched a patrol unit to her address. Corporal Jon Briceno also responded to the dispatch call.

While driving through the neighborhood, Briceno came across a small, light-colored truck stopped at a stop sign, with Brian Poole in the driver's seat. As Poole attempted to turn, Briceno activated his lights and sirens, intending to initiate a traffic stop. Instead of stopping, Poole straightened the car and drove into the parking lot of a nearby golf course, then back out onto the street. For the next fifteen minutes, Poole drove slowly through the residential area, followed by Briceno and, eventually, six other police cars. During this low-speed pursuit, Poole disobeyed traffic signals, went through two yards, and drove on the wrong side of the road to avoid spike strips the police deployed. Poole later explained that he "was having issues with suicidal thoughts" and drug use and had kept driving to avoid a parole violation, which would mean getting kicked out of his sober living home.

When Poole finally came to a stop, he hastily exited his vehicle and reached into the bed of his truck, retrieving nothing. As he did so, Briceno pulled up behind Poole and jumped out of his police car so quickly that he failed to put it in park. Another officer stopped behind Briceno.

The parties provide competing accounts of what happened next.

Briceno claims that as he got out of his vehicle and drew his weapon, he commanded Poole to "show me your hands." Briceno maintains he could not see Poole's hands after Poole reached into the bed of the truck and

thought Poole intended to harm him or other officers on the scene. But Poole testified that, in his suicidal state, he had reached into the truck bed to grab a soda so that he could take a whole bottle of prescription pills. Poole said that he ran out of time to retrieve the drink and so he decided to get back into the truck and keep driving. He did not recall hearing any commands from Briceno.

The dashcams from two patrol cars captured this interaction and the moments that followed.[1] The footage shows that after Poole reached into the truck bed, his hands were empty. Poole paused for about a second with his right hand on the edge of the pickup's bed and his left hand attempting to open the driver-side door. Then, as Poole managed to open the door, Briceno shuffled into a shooting stance and called out something too garbled to decipher.

As Poole turned his back to Briceno and began to lower himself into the driver's seat, shots rang out. Briceno fired six times, striking Poole with four bullets in his back and thigh.

After the shooting, Poole was arrested and later pleaded guilty to Aggravated Flight from an Officer. *See* LA. STAT. ANN. § 14:108.1©.

Poole then sued Briceno and the City of Shreveport for excessive force in state court.[2] After Pool clarified that he was bringing a federal Fourth Amendment claim in addition to state tort claims, the defendants removed the case to federal court. Ultimately, Poole brought: a section 1983 claim

---

[1] A composite video featuring footage from both dashcams can be viewed at the following link: https://www.ca5.uscourts.gov/opinions/pub/21/21-30015.mp4.

[2] Poole died during the pendency of this case. His estate, which is now pursuing the case, is represented by his mother, Janet Creech Poole.

No. 21-30015

against Briceno for excessive force; state-law tort claims against Briceno; and federal and state claims against the City.

The defendants moved for summary judgment. Their motion asserted various grounds for dismissal, including that Briceno was entitled to qualified immunity and that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the suit because Poole's claims would impugn the validity of his conviction for fleeing. The defendants also argued that Poole failed to identify a policy or practice that would make the City liable for any constitutional violation.

The district court dismissed Poole's federal claims against the City but determined that genuine issues of material fact prevented it from granting qualified immunity to Briceno. It further held that *Heck* did not preclude Poole's claims because at the time of the shooting, Poole was not a driver refusing a police officer's command to stop his vehicle—the offense to which he pleaded guilty. The court also denied summary judgment on Poole's state-law claims against Briceno and the City.

The defendants now bring this interlocutory appeal, challenging the district court's denial of qualified immunity and its *Heck* ruling.[3]

## II.

Qualified immunity shields officers from liability unless their conduct violates a clearly established federal right of which a reasonable person would have known. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). In addition to granting this substantive protection, courts have attached meaningful procedural advantages to the doctrine, such as the right to an interlocutory appeal when the district court denies immunity. *See Mitchell v.*

---

[3] There is no interlocutory jurisdiction to review the municipal liability ruling as it does not turn on qualified immunity. *See Trent v. Wade*, 776 F.3d 368, 388 (5th Cir. 2015). Indeed, the plaintiff does not attempt to appeal that ruling at this time.

*Forsyth*, 472 U.S. 511, 527–30 (1985); *see generally* William Baude, *Is Qualified Immunity Unlawful?*, 106 CALIF. L. REV. 45, 84 (2018) ("[A] series of Supreme Court decisions have also given qualified immunity special status as a matter of civil procedure.").

But there is an important limit on our interlocutory review—a limit that this appeal largely turns on. With one exception discussed below, we cannot question the district court's assessment of "whether there is enough evidence in the record for a jury to conclude that certain facts are true." *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc) (quoting *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)); *see Johnson v. Jones*, 515 U.S. 304, 313–14 (1995). We only review whether the factual disputes identified by the district court are material to the denial of qualified immunity—that is, whether the factual disputes viewed in favor of the plaintiff make out a violation of clearly established law. *Amador v. Vasquez*, 961 F.3d 721, 726 (5th Cir. 2020).

The district court denied qualified immunity after finding three factual disputes a jury must resolve:

1. Whether Briceno warned Poole before firing;
2. Whether Poole was turned away from Briceno during the shooting; and
3. Whether Briceno could see that Poole's hands were empty.

Once it determined that a jury could find that Briceno shot Poole in the back, without warning and knowing his hands were empty, the district court readily concluded that such conduct would violate clearly established law.

Given the manifest unreasonableness of shooting an individual the officer can see is unarmed and not aggressive, Briceno understandably tries to push back on these findings. But his argument that the district court should have accepted his account of the incident runs up against our inability at this stage to review the existence of fact disputes. Briceno argues that the

angle of the dashcam video does not show his view of Poole, and thus concludes that the district court had to accept his testimony that he did not see Poole's empty hands. He cites cases granting an immunity defense because the court found no evidence to counter the officer's testimony about what he saw. *See Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 (5th Cir. 2009). Yet in neither of those cases was our review restricted to focusing on the materiality of factual disputes found by the district court as opposed to the existence of those disputes. *Ontiveros* was an appeal from a final judgment granting summary judgment to the officer. 564 F.3d at 382. Although *Manis* was an interlocutory appeal, we had the ability to "scour the record and determine what facts the plaintiff may be able to prove at trial" because the district court only issued a conclusory ruling that "disputed issues of material fact" exist. 585 F.3d at 843 (first quotation from *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001)).

Here, the district court's finding of factual disputes was far from conclusory. It specified three fact disputes a jury would need to resolve. Our general inability to review the existence of fact disputes thus applies.

We did mention, however, an exception to this rule. On interlocutory review, a court may consider video recordings in determining whether a factual dispute exists. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (encouraging courts of appeals to "view[] the facts in the light depicted by the videotape" and granting immunity defense when that video "blatantly contradicted" the plaintiff's testimony); *see also Curran v. Aleshire*, 800 F.3d 656, 663–64 (5th Cir. 2015) (recognizing *Scott* as an exception to the usual prohibition on interlocutory review of the genuineness of factual disputes). But this exception hinders rather than helps Briceno's appeal. The dashcam video shows that Poole was moving away from Briceno with his back turned when he was shot. It also shows that his hands were visible and empty before

the shots were fired. Although Briceno argues that the video does not show the exact angle at which he was looking at Poole, it is close enough to Briceno's vantage point—Briceno was less than ten feet away from Poole—to be probative of what he saw. Evidence need not be conclusive to be relevant. *See* FED. R. EVID. 401(a) (explaining that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence"). The district court did not hold that the video *required* a finding that Briceno shot a man he could see was unarmed. It only held that a jury could draw that conclusion from the video. We agree. As a result, this is not a case of no evidence to counter the officer's testimony. It is a case in which evidence the Supreme Court has recognized as especially compelling could be viewed as contradicting the officer's testimony.[4]

Our review of the video evidence thus confirms what the district court recognized: there is a factual dispute about whether Briceno gave a warning before shooting, whether Poole was turned away during the shooting, and whether it was apparent that Poole's hands were empty.

That brings us to the issue we do have full authority to review on interlocutory appeal—whether those fact disputes are material to the

---

[4] This case is thus distinguishable from others reversing denials of qualified immunity based on video evidence. Briceno draws our attention to a recent Sixth Circuit decision. *See Cunningham v. Shelby Cnty.*, 994 F.3d 761 (6th Cir. 2021). *Cunningham* held that it was error for the district court to find a factual dispute based on screenshots of a dashcam video when the video itself was available, concerned that screenshots do not reflect the reality of a rapidly evolving scene. *Id.* at 766–67. Here the district court did not rely on screenshots in finding a fact dispute; it properly looked to the video itself.

Briceno also points to another recent excessive force case involving Shreveport. *Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021). But the *Tucker* video showed numerous aggressive acts by the plaintiff, culminating in his physically struggling with the officers trying to arrest him. *Id.* at 179–81. Poole did not use any physical force against Briceno. What is more, *Tucker* did not involve officers' use of deadly force, which requires greater justification than using physical force to subdue an individual physically resisting arrest. *See Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018).

excessive force question.  All three issues are material.  Even when a suspect is armed, a warning must be given, when feasible, before the use of deadly force.  *Cole*, 935 F.3d at 453 (citing *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)).  Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer.  *Roque v. Harvel*, 993 F.3d 325, 339 (5th Cir. 2021); *Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017).  And whether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use of deadly force.  *See Garner*, 471 U.S. at 11.  That is why the district court's finding that a jury could conclude Poole was visibly unarmed when shot is so important.  It distinguishes this case from "furtive gesture" cases in which the officer could reasonably fear that the suspect was about to pull a gun from a waistband or other hidden location.  *See Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021); *Manis*, 585 F.3d at 839; *Ontiveros*, 564 F.3d at 379.

It should go without saying that it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead."  *See Garner*, 471 U.S. at 11 (stating that use of deadly force is excessive unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others"); *Roque*, 993 F.3d at 329; *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018); *Lytle v. Bexar Cnty.*, 560 F.3d 404, 417 (5th Cir. 2009).  Even Briceno concedes that an officer violates clearly established law if he shoots a visibly unarmed suspect who is moving away from everyone present at the scene.  *See Garner*, 471 U.S. at 11; *Roque*, 993 F.3d at 339; *Waller*, 922 F.3d at 601; *Lytle*, 560 F.3d at 417–18; *see also Cole*, 935 F.3d at 453–54 (finding clearly established violation of Fourth

No. 21-30015

Amendment even when officer shot individual holding gun but the gun was not aimed at the officer).[5]

If a jury views the disputed facts in favor of the plaintiff—concluding that Briceno shot Poole, without warning, seeing that he was empty-handed and turning away from the officer—then Briceno violated Poole's clearly established right to be free from unreasonable seizure.

III.

Qualified immunity is not the only defense Briceno pursues on appeal. He also argues that *Heck v. Humphrey* bars Poole's section 1983 claim because of Poole's conviction for Aggravated Flight from an Officer. 512 U.S. at 487. *Heck* bars section 1983 actions when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Id.*

Our caselaw is inconsistent about whether we have jurisdiction to address *Heck* issues on interlocutory appeal. *Sappington v. Bartee* held that a district court's "denial of a summary judgment is reviewable and subject to reversal if the claim is barred under *Heck*." 195 F.3d 234, 236 (5th Cir. 1999) (per curiam) (citing *Wells v. Bonner*, 45 F.3d 90, 94–96 (5th Cir. 1995)). But in later, unpublished decisions, we indicated that a district court's failure to apply *Heck* should not be reviewed in an interlocutory posture because

---

[5] Briceno argues for the first time on appeal that regardless of whether he could see Poole's empty hands, qualified immunity is warranted because he acted reasonably to prevent Poole from fleeing in his truck and endangering the public. This argument is likely forfeited because it was not urged in the trial court. *See Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (per curiam). Even if it is properly before us, Briceno shot Poole before Poole even reentered the car. If the fear was that Pool was about to restart the chase, conduct far short of using deadly force—shooting the tires, for instance—was possible. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (indicating that use of lesser force is appropriate when suspect does not pose an immediate threat). And if the fear was not that Poole would shoot Briceno but that he was going to get back in the car, the factual dispute about whether Briceno warned Poole before shooting takes on added importance. *See Cole*, 935 F.3d at 453–54 (warning must be given when feasible before use of deadly force).

"[u]nlike immunity rights, an appellate court can effectively review the applicability of *Heck* after an entry of final judgment[,] making interlocutory review unnecessary." *Southall v. Arias,* 256 F. App'x 674, 676 (5th Cir. 2007) (per curiam) (unpublished) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000)); *see Latham v. Faulkner*, 538 F. App'x 499, 500 (5th Cir. 2013) (per curiam) (unpublished).[6]  Under our rule of orderliness, the earlier published decisions control over the later unpublished ones. *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002).  We thus can review the *Heck* issue at this stage.

We agree with the district court that *Heck* is no barrier to Poole's claim.  The law Poole violated criminalizes "the intentional refusal of a driver to bring a vehicle to a stop" under circumstances that endanger human life. La. Stat. Ann. § 14:108.1(C).  At the time the shooting occurred, Poole had already stopped driving and exited his truck.  Poole's excessive force claim therefore is "temporally and conceptually distinct" from his flight offense. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).  Put another way, it would not be inconsistent with the state court's finding that Poole fled the police for a jury to conclude that an officer used excessive force after that flight ended.  *See, e.g.*, *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1194 (11th Cir. 2020); *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1126 (10th Cir. 1999); *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997) (all recognizing that a plaintiff's conviction for fleeing officers could coexist with a finding the officers used excessive force after apprehending the suspect).

---

[6] These later decisions are consistent with the prevailing approach of other circuits. *See Limone v. Condon*, 372 F.3d 39, 50–51 (1st Cir. 2004); *Norton v. Stille*, 526 F. App'x 509, 514 (6th Cir. 2013) (unpublished); *Cunningham*, 229 F.3d at 1285; *Sayed v. Virginia*, 744 F. App'x 542, 547 (10th Cir. 2018) (unpublished); *Harrigan v. Metro Dade Police Dep't Station #4*, 636 F. App'x 470, 476 (11th Cir. 2015) (per curiam) (unpublished).

No. 21-30015

\* \* \*

Our interlocutory review is limited. For those issues we can review at this time, we AFFIRM the district court's denial of summary judgment.