# United States Court of Appeals
# for the Fifth Circuit

---

No. 22-30329

---

Janice Irene Creech Poole, *Independent Administrator, on behalf of Brian Steven Poole Estate*,

*Plaintiff—Appellant*,

*versus*

City of Shreveport; Jon Briceno,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CV-1125

---

Before Clement, Oldham, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Jon Briceno, a corporal with the Shreveport Police Department, shot Brian Poole four times. Poole filed a 42 U.S.C. § 1983 suit against Briceno. After a bench trial, the district court ruled that Briceno was protected by qualified immunity. The case turned on whether Briceno could see that both of Poole's hands were empty and, therefore, knew that Poole was unarmed at the time Briceno shot him. Based on testimony at trial, the district court determined that Briceno could not see Poole's left hand and thus reasonably believed that Poole was reaching for a gun. With that assessment, the court

concluded that Briceno's use of deadly force was reasonable because he had probable cause to believe that Poole posed a threat of serious bodily harm.

Finding no clear error, we affirm.

## I.

During the early morning hours of March 31, 2017, Poole was driving around Shreveport, Louisiana.  He did not want to return to his sober living home because he had relapsed and would be drug-tested upon his return.  A positive drug test would have likely resulted in the revocation of his parole and his return to prison.

A resident in the Broadmoor neighborhood, concerned about a truck that had made several passes down her street in the middle of the night, called the Shreveport Police Department.  Officer Briceno responded to the call.  He located Poole's truck, which was stopped at a stop sign for an unusually long time.  Briceno activated his lights and sirens in an attempt to conduct an investigatory stop of Poole's vehicle.

Poole refused to stop.  Instead, he led Briceno on a slow-speed chase through the residential neighborhood.  The dashcam footage shows that "Poole ran stop signs, a red light, drove through two residential yards, [and] crossed into the wrong lane of traffic on a major thoroughfare to avoid hitting spike strips deployed by [the police]."  Eventually, six patrol cars joined in the chase to stop Poole.

Poole evaded police for fifteen minutes during the slow-speed pursuit.  Then, Poole jumped out of his truck and reached into the bed of his vehicle.  Briceno also stopped his vehicle, moved to the left side of the vehicle door, and drew his weapon.  Briceno testified that he shouted at Poole to show his hands, and while the audio is unintelligible, the dashcam video corroborates that Briceno yelled something at Poole.  The video records that Poole then

placed his right hand on the truck bed, moved his left hand towards the truck driver's side door, and turned his head towards Briceno, who was behind him. Briceno then fired his weapon six times and wounded Poole in his back and thigh.

From the time Poole stopped his truck, the whole altercation spanned eight seconds. The dashcam video showed that Poole retrieved nothing from the bed of his truck, and he was unarmed at the time he was shot.[1]

Poole initially filed suit against Briceno and the City of Shreveport in state court but did not clearly identify the causes of action he alleged. After Poole clarified that he was bringing a federal claim in addition to state tort claims, the defendants removed the case to federal court based on federal question jurisdiction. Poole then filed an amended complaint that explicitly alleged claims for excessive force under 42 U.S.C. § 1983, assault, battery, negligence, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress.[2] While the case was pending, Poole died. His estate substituted as plaintiff, represented by its administrator, Janice Irene Creech Poole, Poole's mother.

After discovery, the defendants moved for summary judgment. They contended that they were entitled to qualified immunity because Briceno's use of force was reasonable. The district court denied summary judgment as to qualified immunity. The district court found that there were "genuine issues of material fact . . . [as to] whether Briceno's actions were objectively

---

[1] Poole was arrested and charged with aggravated flight from an officer. He pled guilty and was sentenced to 2.5 years in prison.

[2] The district court construed the state law claims against the City of Shreveport as a *Monell* claim. That claim is not at issue in this appeal.

reasonable."[3]  But the district court granted summary judgment to the City of Shreveport, dismissing the *Monell* claim against the city because Poole's estate failed to point to an official policy or custom that caused Poole's injury.

Briceno pursued an interlocutory appeal.  A panel of this court affirmed the district court's denial of summary judgment as to qualified immunity, concluding "that there was a violation of clearly established law *if* the jury resolves the factual disputes in favor of the plaintiff." *Poole v. City of Shreveport*, 13 F.4th 420, 422 (5th Cir. 2021) (emphasis added).

The district court conducted a bench trial from February 14–16, 2022. Following the trial, the district court issued a memorandum order in favor of the defendants and dismissed all claims against Briceno and the City of Shreveport.  The court determined that "this case hinge[d]" on the parties' fact dispute over "whether Briceno could see that both of Poole's hands were empty before he fired the first shot."  The court credited Briceno's "adamant[]" testimony that he could not see Poole's left hand, as well as the "particularly compelling" testimony of the defendants' expert witness, who testified that officers are trained to respond as Briceno did.  The court also recognized the surrounding circumstances:  "It was dark and the lights from the police vehicles were flashing."  While the district court acknowledged that close review of the dashcam video revealed that Poole's left hand was in fact empty, it determined that "Briceno did not have the leisure" to conduct such a close assessment of the scene.

Based on all of this, the district court concluded that "Briceno did not see Poole's left hand, nor did he deduce that Poole's left hand must have

---

[3] The district court also held that Poole's state law claims survived summary judgment but noted that such claims would rise and fall with Poole's excessive force claim and the question of qualified immunity.

been empty because he was using it to open the truck door." Because "Briceno reasonably believed that Poole was reaching for a gun when he reached into the back of the truck," the court found that his response was that of "any . . . reasonable policeman in the same situation." Therefore, the court concluded that Briceno was not liable for use of excessive force "because he had probable cause to believe Poole posed a threat of serious bodily harm when he reached into the truck bed." The court held that "qualified immunity would protect Briceno from liability in this case because a reasonable officer could have believed that shooting Poole was lawful in light of clearly established law and the information Briceno possessed at the time of the shooting."

After the district court entered its final judgment, Poole's estate filed a motion for reconsideration or, in the alternative, a new trial. The district court denied the motion without explanation. Poole's estate timely appealed.

## II.

On appeal from a bench trial, we review the district court's decision for clear error as to the court's findings of fact and *de novo* as to legal issues. *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 232–33 (5th Cir. 2022). We give great deference to factual findings made during a bench trial. *Id.* at 233. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). "[E]ven greater deference" is afforded "the trial court's findings when they are based on determinations of credibility." *Id.* (quoting *Deloach Marine Servs. L.L.C. v. Marquette Transp. Co.*, 974 F.3d 601, 607 (5th Cir. 2020)).

No. 22-30329

## III.

## A.

Poole's estate asserts that the district court issued three inconsistent "rulings." First, the district court stated at the close of evidence that it was prepared to find that Briceno's use of force was excessive. Then, the district court ruled from the bench the following day that Briceno acted reasonably and according to his training. Last, the district court entered a final memorandum order that, consistent with its oral ruling, found in favor of Briceno. Poole's estate contends that these incongruous holdings demonstrate reversible error.

But the plaintiff's argument collapses against the actual trial record. At the close of evidence, the district court did not issue any ruling at all, inconsistent or otherwise. Rather, the district judge plainly stated that "[w]hat I am going to do is tell you where I am now and at 10:00 tomorrow [during closing arguments] I'm going to let you-all try and talk me out of it." The district judge then offered an initial assessment of the evidence—favorable to Poole, to be sure—but the court made clear that those thoughts were not conclusive findings of fact. Instead, they were merely preliminary to closing arguments, when the judge invited the parties to "try and talk [him] out of it." Apparently, the defendants succeeded at doing just that. Regardless, rather than splicing or dicing every oral pronouncement made by the district court, we review the district court's memorandum order issued after the bench trial, as that order distills the district court's findings of fact and conclusions of law.

Turning there, Poole's estate contests the district court's factual finding that Briceno could not see Poole's left hand when he opened fire because "Briceno has no credibility." At trial, Briceno testified repeatedly that he could not see Poole's left hand when he first fired at Poole. The

district court, sitting as fact-finder, credited Briceno's "adamant[]" testimony. Based on this testimony and weighing the surrounding circumstances, the district court concluded that Briceno testified credibly and that he had, in fact, not seen Poole's left hand.

Poole's estate lodges many arguments why the district court should not have found Briceno's testimony credible. But findings of fact made during a bench trial "deserve great deference," and even more so when "based on determinations of credibility." *Hess Corp.*, 26 F.4th at 233. Based on the record before us, the district court's finding that Briceno could not see Poole's left hand at the time he fired his weapon is not clearly erroneous.

That the dashcam video shows that both of Poole's hands were empty does not alter this conclusion. When considering qualified immunity at the summary judgment stage, the prior panel of our court affirmed that the video potentially supported a finding that Briceno could see that Poole was unarmed, but that panel agreed that the video did not require such a finding. *Poole*, 13 F.4th at 424–25. While the video "could be viewed as contradicting the officer's testimony," *id.* at 425, the district court concluded that the officer's testimony was credible despite the video. Given our deferential standard of review, we decline to disturb the district court's factual determination on that point.

**B.**

Next, we review the district court's determination that Briceno was entitled to qualified immunity. "Qualified immunity shields officers from liability unless their conduct violates a clearly established federal right of which a reasonable person would have known." *Id.* at 423 (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)). To overcome qualified immunity, a plaintiff must satisfy a two-part test by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was

'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). This is an exacting standard that protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743 (citation omitted).

In asserting that the district court erred in granting qualified immunity after the bench trial, Poole's estate focuses on the factual disputes identified by our prior panel: (1) "Whether Briceno warned Poole before firing;" (2) "[w]hether Poole was turned away from Briceno during the shooting;" and (3) "[w]hether Briceno could see that Poole's hands were empty." *Poole*, 13 F.4th at 424. The prior panel concluded that, if the three factual disputes were resolved in favor of the plaintiff, then there was a violation of clearly established law.[4] *Id.* at 422.

But, critically, at least the third factual dispute—whether Briceno could see that Poole's hands were empty—was not resolved in favor of the plaintiff.[5] Rather, the district court concluded that Briceno could *not* see that both of Poole's hands were empty. Based upon this determination, the district court concluded that Briceno reasonably believed that Poole was reaching for a gun in the truck.

"An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). "[W]hether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use

---

[4] This is because "an officer violates clearly established law if he shoots a visibly unarmed suspect who is moving away from everyone at the scene." *Poole*, 13 F.4th at 425.

[5] It does not appear that the district court made a definitive finding as to the other two issues (whether Briceno gave a warning and whether Poole was turning away from Briceno during the shooting) in its memorandum order.

of deadly force." *Poole*, 13 F.4th at 425 (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Based on the district court's finding that Briceno reasonably believed that Poole was reaching for a weapon, Briceno's use of force is entitled to qualified immunity. *See Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021) (granting qualified immunity to an officer who shot a suspect who reached her hand behind her back toward her waistband out of the officer's view); *see also Manis*, 585 F.3d 839 (granting qualified immunity to officers who fatally shot a suspect who reached his hand under the seat of his car); *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379 (5th Cir. 2009) (granting qualified immunity to officers who fatally shot a man who reached into a boot for what the officers believed could be a weapon).

## IV.

As the district court noted, "[t]he facts of this case are tragic for all involved." But tragic facts in themselves do not prove liability. Rather, for an officer to be liable for use of excessive force under § 1983, he must have acted unreasonably.

With the benefit of frame-by-frame view of the dashcam video, we know that both of Poole's hands were empty when Briceno opened fire. But weighing the evidence at trial, the district court found that Briceno did not know that Poole's left hand was empty at that moment in time. Based on the court's finding that Briceno reasonably believed that Poole was reaching for a weapon, the district court properly held that Briceno was entitled to qualified immunity.

AFFIRMED.