# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2025

Lyle W. Cayce
Clerk

No. 24-60610

Alexis Jew,

*Plaintiff—Appellee*,

*versus*

Sam Dobbins, *in his individual capacity and in his former official capacity as the Chief of Police of Lexington, Mississippi Police Department*; Charles Henderson, *in his individual capacity and in his official capacity as interim and current Chief of Police of the Lexington, Mississippi Police Department*; City of Lexington, Mississippi,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-2983

Before Jones, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Appellants challenge an order denying their motions for judgment on the pleadings without prejudice and staying the proceedings pending resolution of an underlying criminal case against the Appellee and a

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

conference between the parties. We DISMISS this appeal for lack of jurisdiction.

## I

## A

While she was pumping gas at a gas station in Lexington, Mississippi, Alexis Jew went inside to buy a drink.[1] When she realized that she did not have cash, she went back outside toward her truck at the pump. Two Lexington Police Department (LPD) officers, former Chief Sam Dobbins and current Chief Charles Henderson, met her there. The officers asked Jew for her driver's license. Jew asked why, and Henderson "grabbed [Jew] by the arm, pushed her onto the front of the passenger's side of a car parked next to [Jew's] truck, and handcuffed her." Henderson "forcibly" searched her and told her that she "was going to jail for failure to comply." The officers arrested Jew and took her to the police station.

On the way to the police station, Henderson asked Jew for her name. Jew gave the officer the last name of her ex-husband, whom she had recently divorced, because she had forgotten that her identification card bore her maiden name, Jew. At the police station, Jew gave Henderson her identification card, and he "accused her of lying" about her identity.

Henderson then told Jew that she would have to pay $1,283 to be released. When Jew stated that she could not afford to pay that amount, Henderson took Jew to Holmes County jail, where she spent the night. The next morning, Jew's sister came to the jail, and at Henderson and Dobbins' instruction, paid $1,283 to secure Jew's release. LPD did not issue Jew's

---

[1] "Our recitation of the facts comes from [Jew's live] complaint, which we must take as true given that our review is of a Rule 12(c)" motion. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 428 n.1 (5th Cir. 2023).

sister a receipt. Jew received paperwork that instructed her to appear in municipal court on December 18, 2021.

Jew went to the municipal court on December 18, but court staff told her to go home after she told them that she had contracted COVID-19. Court staff also told her that "someone would reach out . . . about the pending charges." No one ever did. More than a year later, after Jew repeatedly "inquired about the status of her case," a court official told Jew that "she had already been charged and found guilty of 'obstruction of justice' and providing false information to the police, and that she had already paid the requisite fines." An arrest report states that Jew was "found guilty in abstents [sic]" of providing false identifying information and disorderly conduct in Lexington Municipal Court on December 30, 2021. The Lexington Municipal Court has no record of Jew's conviction. Neither does the City of Lexington (the City).

B

Jew sued Dobbins and Henderson under 42 U.S.C. § 1983 and the Mississippi Tort Claims Act (MTCA), alleging that any purported "conviction" is "fictious" and that the LPD officers "extort[ed]" her. She asserts claims for: (1) unreasonable search and seizure; (2) false arrest; (3) unreasonable search incident to arrest; (4) excessive force; (5) excessive detention without a probable cause hearing; (6) unreasonable seizure of her property; (7) deprivation of her right to due process; and (8) conversion. Jew also alleges that the City is liable under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

Dobbins, and Henderson and the City, (collectively, "Appellants"), separately moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). They asserted that: (1) Jew's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the officers are entitled to qualified

No. 24-60610

immunity on her § 1983 claims; and (3) they are entitled to governmental immunity on her MTCA claim.

The district court denied the motions without prejudice and stayed the case "until the state of Jew's charges is firmly and finally resolved." It ordered "the parties to confer and seek to reach a consensus, if at all possible, on whether Jew was convicted of any crime." This appeal followed.

II

Jew argues that because the district court never decided the *Heck* issue, its order is not a final appealable order under 28 U.S.C. § 1291, so this court lacks jurisdiction. We agree.

Under § 1291, "courts of appeals [may exercise] jurisdiction over appeals only from 'final decisions' of the district courts . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (citation modified). "[A] decision is final only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Cook v. City of Tyler, Tex.*, 974 F.3d 537, 539 (5th Cir. 2020) (quoting *Sealed Appellant 1 v. Sealed Appellee*, 199 F.3d 276, 278 (5th Cir. 2000)). Ordinarily, an order staying proceedings is not final and appealable. *Kershaw v. Shalala*, 9 F.3d 11, 14 (5th Cir. 1993).

Appellants do not dispute that the district court's order is not a final appealable order under § 1291. The district court did not decide the *Heck* issue, or any other issue raised in Appellants' motions. It deferred its decision, stayed the case, instructed the parties to confer regarding the existence of a conviction, and denied Appellants' motions *without prejudice*. The district court's order clearly contemplated further proceedings. It is not a final judgment over which we may exercise jurisdiction. *See Cook*, 974 F.3d at 539–40 (holding that when "litigation on the merits is not over[,]" we lack jurisdiction under § 1291).

4

### III

Appellants argue that this court has jurisdiction under the collateral-order doctrine because the district court "refus[ed] to apply" *Heck* and to grant them immunity. We disagree.

"The collateral-order doctrine is an atextual exception to the longstanding final-judgment rule embodied in 28 U.S.C. § 1291." *Heidi Grp., Inc. v. Texas Health & Hum. Servs. Comm'n*, 138 F.4th 920, 928 n.5 (5th Cir. 2025). Under the doctrine, a decision "is appealable if it falls within 'that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action . . . .'" *Mitchell*, 472 U.S. at 524–25 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Interlocutory review of those decisions is appropriate because the issues are "'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Id.* (quoting *Cohen*, 337 U.S. at 546).

An order reviewable under the collateral-order doctrine "must meet four requirements": (1) it must "finally dispose of an issue so that the district court's decision may not be characterized as tentative, informal[,] or incomplete"; (2) "the question must be serious and unsettled"; (3) "the order must be separable from, and collateral to, the merits of the principle case"; and (4) "there must be a risk of important and irreparable loss if an immediate appeal is not heard because the order will be effectively unreviewable on appeal from final judgment." *Kershaw*, 9 F.3d at 14.

### A

The parties do not meaningfully discuss whether the district court's order is reviewable under the collateral-order doctrine. The order did not "finally dispose of an issue." *Id.* It only stayed the case pending a conference to answer a question necessary to decide the merits of Appellants' motions—

whether Jew was ever convicted. "[S]tay orders rarely satisfy" the requirements of the collateral-order doctrine. *Id.* And because the order facilitates a decision on the merits, it is not "separable from" the merits. *See id.* Appellants have not shown that the district court's order meets all four of the requisite requirements for review under the collateral-order doctrine.

B

Appellants instead argue that under *Frederick v. LeBlanc*, No. 21-30660, 2023 WL 1432014 (5th Cir. 2023) (per curiam) (unpublished), "[w]e can review [a] . . . decision not to apply the *Heck* bar notwithstanding interlocutory posture."

While "[o]ur caselaw is inconsistent about whether we have jurisdiction to address *Heck* issues on interlocutory appeal[,]" we have made clear "that a . . . 'denial of a summary judgment is reviewable . . . if the claim is barred under *Heck*.'" *Poole v. City of Shreveport*, 13 F.4th 420, 426 (5th Cir. 2021) (quoting *Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999) (per curiam)). *Frederick* is consistent with that holding. 2023 WL 1432014 at *3 ("[P]recedent establishing 'that a district court's denial of summary judgment is reviewable [on interlocutory appeal]. . . if the claim is barred by *Heck*' controls.") (quoting *Sappington*, 195 F.3d at 236).

*Frederick*, *Poole*, and *Sappington* do not establish our jurisdiction here for two reasons. First, while these cases demonstrate that we may have jurisdiction under the collateral-order doctrine to review the denial of *summary judgment* when a claim is *Heck*-barred, these cases do not contemplate a denial of a motion for judgment on the pleadings under Rule 12(c). *See id.*; *Poole*, 13 F.4th at 421; *Sappington*, 195 F.3d at 235. Rule 12(c) requires us to take Jew's factual allegations as true. *See Harrison*, 82 F.4th at 428 n.1. Jew pled that she was never convicted of any offense, and any

proffered conviction is "fictitious[,]" rendering *Heck* inapplicable.[2] *See Hoog-Watson v. Guadalupe Cnty., Tex.*, 591 F.3d 431, 434 (5th Cir. 2009) ("*Heck* applies only to suits that implicate prior criminal proceedings.") (citation modified); *Chisolm v. Complainant Unknown*, 597 F. App'x 807, 808 (5th Cir. 2015) ("The record contains no evidence that [plaintiff] was ever prosecuted or convicted of any offense; therefore, *Heck* does not apply."). On interlocutory appeal "[w]e lack jurisdiction to" evaluate "factual disputes[,]" *Winfrey v. Pikett*, 872 F.3d 640, 643–44 (5th Cir. 2017), and Rule 12(c)'s standard forbids us from considering them. *See Harrison*, 82 F.4th at 428 n.1.

Second, *Frederick*, *Poole*, and *Sappington* potentially establish interlocutory jurisdiction over only *denials* of motions for summary judgment when a claim is *Heck*-barred. *Frederick*, 2023 WL 1432014 at *3; *Poole*, 13 F.4th at 421; *Sappington*, 195 F.3d at 235. They do not address cases, like this one, in which the district court did not decide the *Heck* issue.[3]

---

[2] Because a conviction is a matter of public record, the district court could take judicial notice of Jew's conviction, if it exists, in determining a motion under Rule 12(c). *See United States v. Huntsberry*, 956 F.3d 270, 284–85 (5th Cir. 2020) (holding that courts may judicially notice a prior conviction).

[3] Appellants also cite *Colvin v. LeBlanc* to suggest that a "*Heck* ruling [is] appealable" under the collateral order doctrine "when 'the issue [is] whether . . . the plaintiff's pleadings implicate *Heck*' or 'whether *Heck* even applies.'" 2 F.4th 494, 498 n.13 (5th Cir. 2021) (quoting *Cook v. City of Tyler, Tex.*, 974 F.3d 537, 539–40 (5th Cir. 2020)). But *Colvin* concerned an appeal of a final order dismissing claims as *Heck*-barred; it did not consider the collateral order doctrine. *Id.* at 496–97. Here, because the district court did not decide the *Heck* question, there is no "ruling" to appeal. *See id.*

No. 24-60610

## C

Appellants also argue that this court may exercise interlocutory jurisdiction because the district court denied them immunity.

An order denying qualified or governmental immunity from suit is immediately appealable under the collateral-order doctrine. *Martinez v. Texas Dep't of Crim. Just.*, 300 F.3d 567, 576 (5th Cir. 2002) ("A denial of . . . qualified immunity is immediately appealable under the collateral[-] order doctrine . . . ." (quoting *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999)); *Walton v. City of Verona*, 82 F.4th 314, 320 (5th Cir. 2023) ("[W]e may review denials of immunity under Mississippi law because the immunity is a protection from suit."). But the denial of immunity is only subject to interlocutory appeal if "it turns on an issue of law." *Mitchell*, 472 U.S. at 530.

First, Appellants have not shown that the district court's decision "turns on an issue of law." *See id.* Because it "is not based on a legal evaluation of the Appellants' entitlement to qualified immunity[,]" there is no reason to "hold that the district court inadvertently made a final legal determination" on that question, permitting us to exercise jurisdiction. *See Armstrong v. Ashley*, 918 F.3d 419, 423 (5th Cir. 2019) (dismissing for lack of jurisdiction an appeal from a denial of a Rule 12(b)(6) motion where the district court's denial of qualified immunity turned on procedural grounds).

Second, the district court did not deny Appellants immunity—it did not reach the issue. It treated *Heck* as a threshold matter, just as we have before. *See, e.g.*, *McNeal v. LeBlanc*, 90 F.4th 425, 430–31 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 266 (2024). It stayed the case and ordered the parties to confer regarding the existence of a conviction so that it could determine

8

that threshold issue.[4] Appellants cite no authority supporting their contention that this decision amounts to a denial of immunity. Where, as here, the district court did not decide anything, Appellants have not shown a basis for us to exercise jurisdiction. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 324 (5th Cir. 2024) ("The Supreme Court has 'repeatedly stressed' that the collateral[-]order doctrine is a 'narrow exception' that should 'never be allowed to swallow the general rule that a party is entitled to a single appeal.'" (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

\* \* \*

The district court's order is not appealable under § 1291 or the collateral order doctrine. But the district court should be mindful that the individual Appellants are entitled to have the issue of their qualified immunity determined at the earliest possible opportunity. *See Carswell v. Camp*, 54 F.4th 307, 310–11 (5th Cir. 2022). When the status of the conviction is ascertained, the district court should promptly accommodate any renewed motion by the Appellants. At this point, Appellants have not carried their burden to establish our jurisdiction. *See Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 293 (5th Cir. 2007) (holding that the appellant bears the burden to establish jurisdiction).

IV

DISMISSED.

---

[4] It is true that under *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022), Appellants may not be subjected to further discovery unless the district court denies them immunity. That limit is not implicated here because the district court only ordered conferral. Indeed, Appellants acknowledge that all they must do is "to confer and report back" as to whether Jew was convicted of any crime.