[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10498

_____

D.C. Docket No. 9:15-cv-80972-RAR

REGINALD EUGENE GRIMES, SR.,

Plaintiff - Appellant,

versus

OFFICER RICHARD ROTT,
STEVEN HEARN,
Federal Task Force Officer,
ANDREW TALLICHET,
Federal Task Force Officer,
ANTON FRANKS,
Federal Task Force Officer, et al.,

Defendants - Appellees,

DRUG ENFORCEMENT ADMINISTRATION,
FIVE UNKNOWN NAMED AGENTS OF FEDERAL TASK FORCE,
DAVID SANTANA,
Deputy U.S. Marshal, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 27, 2021)

Before WILSON, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

Reginald Grimes appeals the district court's grant of judgment notwithstanding the verdict after a jury returned a verdict finding that four law-enforcement officers violated his Fourth Amendment right to be free from excessive force. Grimes was apprehended after a traffic stop, as part of a coordinated plan to arrest 19 individuals named in an indictment charging various federal narcotics offenses. At trial, Grimes testified that (1) after he laid down with his face on the ground, Officer Richard Rott handcuffed him, struck him on the head, and forcibly held him down, and (2) for the next two-to-three minutes other officers on the scene hit and kicked him. Grimes later identified the other officers as Special Deputy U.S. Marshals Steven Hearn, Anton Franks, Andrew Tallichet, Christian Baker, Bryan Parrett, David Santana, Jacob Sirmans, and Rodney Vizzo.

Following a four-day trial, the jury found that Grimes failed to prove his claims against Baker, Santana, Sirmans, and Vizzo.[1]  With respect to Rott, Hearn, Tallichet, and Franks (collectively, Appellee Officers), the jury found in favor of Grimes, awarding him no compensatory damages and $4,000 per officer in punitive damages.  The Appellee Officers moved for judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b).  The district court granted the motion, finding that Grimes sustained de minimis injuries, and that the Appellee Officers were thus entitled to qualified immunity.  The court also expressed concern that there was insufficient evidence that any other officer besides Rott was liable.

Grimes argues on appeal that the district court erred in granting the motion for judgment notwithstanding the verdict.[2]  Specifically, he argues that the district court applied the wrong legal standard by assessing what force officers may use before or during—rather than after—a legal arrest.  He further argues that, employing the correct standard, he presented sufficient evidence for the jury to conclude that Hearn, Franks, and Tallichet violated Grimes's right to be free of excessive force.  The Appellee Officers contend that we should uphold the district

---

[1] Parrett died in 2018 and was dismissed from the case before trial.
[2] Grimes argues in the alternative that he is entitled to a new trial because the district court, in excluding as hearsay Grimes's requests for medical assistance, erroneously required statements made for the purpose of medical treatment to be recorded in formal medical records.  Because we reverse based on Grimes's first argument, we do not reach his second argument.

court's judgment based on the alternative ground that the record contradicts Grimes's account of the events.

Because we find that: (1) the officers were not entitled to qualified immunity, (2) the record does not contradict Grimes's account of the events, and (3) there was sufficient evidence for the jury to find in Grimes's favor with respect to Hearn, Franks, and Tallichet, we reverse the district court's order granting judgment notwithstanding the verdict and remand to the district court to reinstate the jury verdict.

## I.

We review de novo a district court's grant of a Rule 50(b) motion for judgment notwithstanding the verdict, applying the same standard used by the district court in considering such a motion. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). A motion for judgment notwithstanding the verdict should be granted only if, in viewing all the evidence and construing all inferences in the light most favorable to the nonmoving party, the court finds no reasonable juror could have reached the verdict returned. *Ortega v. Schramm*, 922 F.2d 684, 694–95 (11th Cir. 1991) (per curiam).

## II.

As an initial matter, we agree with Grimes that the district court improperly determined that the Appellee Officers were entitled to qualified immunity because

4

Grimes suffered only de minimis injuries.  Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014); *see, e.g.*, *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).  In *Hadley*, for example, we determined that the police officer used excessive force by punching the plaintiff in the stomach while the plaintiff was handcuffed and not resisting arrest.  *Hadley*, 526 F.3d at 1330–31.  Likewise, in *Lee v. Ferraro*, we found excessive force where the police officer slammed the plaintiff's head onto the trunk of her car while she was handcuffed and not posing a threat to the officer. 284 F.3d 1188, 1198 (11th Cir. 2002).

Our caselaw is also clear that "a police officer ha[s] a duty to intervene when he witnesse[s] the use of excessive force and ha[s] the ability to intervene." *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000); *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such

5

as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). "Two minutes [is] long enough for a reasonable jury to conclude that [an officer] had time to intervene . . . ." *Priester*, 208 F.3d at 925.

To be sure, because officers are authorized to use some level of force to make an arrest, the doctrine of qualified immunity generally protects officers from liability for de minimis injuries incurred during the course of a lawful arrest. *See Nolin v. Isbell*, 207 F.3d 1253, 1258–59 (11th Cir. 2000). But our caselaw tells us that such protection is no longer available once the arrest is completed and the suspect is handcuffed and compliant. *See Hadley*, 526 F.3d at 1329–34.

Here, Grimes testified that Rott handcuffed him while he was on the ground, and then Rott hit him, and that other officers then kicked and hit him while Rott held him down, even though he did not resist arrest. He also testified that the beating lasted between two and three minutes, during which time other officers were present and did not intervene. Accepting Grimes's version of events as true, we find that Grimes's beating after having surrendered and having been handcuffed and compliant and the failure by any officers to intervene constitute a per se Fourth Amendment violation, regardless of the scope of his injuries. As such, none of the Appellee Officers who took part in the beating or stood by without intervening is entitled to qualified immunity.

6

III.

The Appellee Officers rely on *Scott v. Harris*, 550 U.S. 372 (2007), to attack the credibility of Grimes's story. *Scott* tells us that a court need not accept as true a plaintiff's story that is so "blatantly contradicted by the record" that no reasonable jury could believe it. *Id.* at 380. In *Scott*, the two opposing parties told two different stories, but an unchallenged video recording "utterly discredited" the plaintiff's version of events. *Id.* Therefore, the Supreme Court explained, it did not "need to adopt [the plaintiff's] version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Similarly here, the Appellee Officers attack Grimes's version of events, arguing that objective evidence renders Grimes's testimony "utterly" incredible because it proves that the officers did not beat him. The Appellee Officers point first to a news video entered into evidence showing Grimes walking to and getting into the police car, as the Appellee Officers put it, "fluidly" and without showing any indication of pain or discomfort. Second is an audio recording of Grimes's interview at the DEA office, which, according to the Appellee Officers, "does not sound like a man who has just been savagely beaten." Third, the Appellee Officers argue that Grimes's booking photographs show only a minor scratch on his forehead. And fourth, the Appellee Officers contend that Grimes's medical records do not reflect injuries consistent with having been beaten.

7

The Appellee Officers' arguments fail for several reasons. First, they ignore objective evidence in the record that corroborates Grimes's story that he was beaten. This includes the intake form that an employee at the Palm Beach County Jail filled out when a DEA officer escorted him there for processing, which stated:

> Grimes appeared to have a head injury. Nurse Langley was called to the Intake area to evaluate Grimes. Nurse Langley refused Grimes for process and instructed me and Federal Officer Linehan that Grimes had to be cleared by an outside physician.

The Appellee Officers also ignore portions of the emergency record that support Grimes's account, including a section titled "history of present illness," which stated:

> The patient presents with . . . multiple injuries to the face. The onset was just prior to arrival. The course/duration of symptoms is constant. Location: injury to the face and neck, back. The character of symptoms is pain and swelling. The degree at onset was moderate. The degree at present is moderate. Risk factors consist of none. Therapy today: none. Associated symptoms: none. Additional history: Patient with [complaints of] facial injury. Patient was brought in by police for medical clearance. Patient was Hit on the face and has multiple contusion[s] to the face and lips.

Under "differential diagnosis," the report stated, "facial contusion." The emergency room records also indicated that the physician evaluating Grimes ordered a CAT scan (which was negative) and prescribed ibuprofen before clearing him to return to the jail.

8

Second, the Appellee Officers do not offer a video recording of the incident, or any other type of objective evidence that "blatantly contradict[s]" Grimes's version of events. *See Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (vacating grant of summary judgment where defendant's documentary evidence did not blatantly contradict plaintiff's story); *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (affirming denial of summary judgment where defendant's forensic evidence did not utterly discredit plaintiff's story).

Instead, the four pieces of evidence that the Appellee Officers put forward do not answer the question of whether Grimes was beaten. The Appellee Officers, in essence, ask us to infer that Grimes was not beaten because, after the incident, he remained able to walk and laugh. But that Grimes was still able to walk and laugh does not mean that he was not beaten earlier, and so the post-arrest video and audio recordings do not directly contradict his testimony. Similarly, the Appellee Officers downplay the injuries apparent in Grimes's booking photo and ask us to speculate that those injuries possibly could have been the result of a car accident. And they ask us to ignore sections of his medical records that support Grimes's testimony, arguing that those parts are not as reliable as the parts that weigh against him. But we decline to make any of those findings here, because we are "required to leave the credibility determinations and the drawing of legitimate inferences to the jury." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1128–29 (11th Cir.

9

2021). And we thus reject the argument that objective evidence in the record blatantly contradicted Grimes's testimony.

IV.

With that in mind, we view the facts in the light most favorable to Grimes and conclude that there was sufficient evidence for the jury to find that Hearn, Franks, and Tallichet violated Grimes's Fourth Amendment rights. To assert a Fourth Amendment claim based on excessive force, a plaintiff must show "(1) that a seizure occurred and (2) that the forced used to effect the seizure was unreasonable." *Troup v. Sarasota Cnty.*, 419 F.3d 1160, 1166 (11th Cir. 2005). And, as previously explained, a police officer may also be liable for failure to intervene when excessive force takes place in his presence if he is in a position to intervene. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

A trial court must respect a jury verdict where it is supported by significant evidence in the record. *Priester*, 208 F.3d at 924–25. If, on the plaintiff's version of the facts, there is a possibility that a reasonable jury could conclude that the police officers used an objectively unreasonable amount of force, judgment notwithstanding the verdict is inappropriate. *Ortega*, 922 F.2d at 695. A jury can find against officers when there is sufficient evidence to infer that they were in the immediate vicinity of a plaintiff at the time that the plaintiff was beaten. *See Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (per curiam).

10

We have expressly rejected the notion that if a plaintiff "did not see who beat him . . . there would be no evidence at trial from which a jury might assign liability for the beating." *Id.* "Were this the law, all that police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence." *Id.*

There was sufficient evidence for this jury to find that Hearn, Franks, and Tallichet either joined or failed to stop the beating. At trial, Grimes, the eight law-enforcement defendants, and three other law-enforcement officers testified about what they did or did not see when Grimes was arrested. In many places, the officers' testimonies were inconsistent with each other as to the sequence of events. Furthermore, taking all testimony in the light most favorable to the jury's verdict, Grimes's basic story goes like this: members of the task force tried to effect a traffic stop, but Grimes did not pull over right away. Eventually, he stopped, exited his vehicle, and voluntarily got down on the ground and put his hands above his head. At some point after that, Rick Rott came over and handcuffed Grimes, who never resisted the handcuffing. Other officers had already walked over by the time Grimes was in handcuffs. After Grimes was handcuffed, Rott hit him in the head with an object shaped like a firearm, and other officers began hitting and kicking him. The beating lasted two to three minutes.

11

Indeed, according to James Hart, who was the deputy U.S. Marshal in charge of the task force that day, his car came to a stop directly behind Grimes's car at the scene of the arrest, and Grimes was already on the ground, but not yet handcuffed, when he got out of his car. Hearn was in the same car as Hart and therefore arrived at the same time, which means before the handcuffing. And Grimes has always maintained that the beating happened after he was handcuffed. While Hearn testified that he did not see the arrest occur and first saw Grimes when he was handcuffed and sitting on the curb, the jury still had sufficient other testimony to find that Hearn was at the scene of the arrest at the time of the beating.

Similarly, Franks and Tallichet—who arrived at the scene in one car—both provided testimony placing themselves at the scene of Grimes's arrest shortly after he was handcuffed. In addition, Hearn testified that Franks and Tallichet were there very soon after he and Hart arrived. Thus, the jury had sufficient circumstantial evidence to find that Franks and Tallichet were at the scene at the time of the beating.

We are not persuaded by Hearn's, Franks's, and Tallichet's argument that the judgment notwithstanding the verdict should be affirmed because Grimes could not specifically identify them. Grimes alleged that Rott and five unknown federal agents were present when he was handcuffed and beaten, and that multiple of those

12

agents kicked and hit him.  He later named the defendants, including Hearn, Franks, and Tallichet, after Rott identified them during discovery.  All three officers admitted to being present.  Therefore, given the record as a whole and in the light most favorable to Grimes, a reasonable jury could infer that Hearn, Franks, and Tallichet arrived fairly quickly and either participated in beating him or failed to intervene.

Accordingly, we reverse the district court's order granting judgment notwithstanding the verdict and remand the case to the district court to reinstate the jury verdict.

**REVERSED AND REMANDED.**

13